JEREMIAH T. WIGGIN and another *v.* WILLIAM FLOWER and another.

Legal subrogation results from the payment of a bill of exchange, or promissory note, by an endorser, though made before maturity. The endorser is included in the third paragraph of art. 2157 of the Civil Code, he being bound with, or for the maker or acceptor, and the article referring to all obligations whatever, whether absolute or conditional.

Though the obligation of an endorser or surety cannot be enforced till after the event on which it becomes absolute, it exists from the time when it was contracted, for it is susceptible of being compromised, released or transferred, and of passing to heirs, &c. So the rights of the endorser, or surety, against the maker or principal, exist before the obligation of the former becomes absolute.

In art. 2130 of the Civil Code, the word *co-obligee*, by an error of the press, is used for *co-obligor*.

The provision of art. 2130 of the Civil Code, which declares, that " an obligation may be discharged by any person concerned in it, such as a co-obligor or a security," recognizes the right of a co-obligor, surety, or any person, like them, concerned in the obligation, to pay, before his obligation becomes absolute ; and the subsequent clause of the same article, which provides that payment by a person in no way concerned in the obligation does not give rise to subrogation, virtually declares that payment by a co-obligor, surety, or other person concerned in it, does create such subrogation.

Endorsers and sureties are, under the Civil Code, conditional obligors of the creditor of the maker and principal, and at the same time, conditional creditors of the latter. Though no conservatory acts can be exercised against the conditional debtor by endorsement, until his obligation becomes absolute, both the endorser and the surety, may, under art. 2037 of the Civil Code perform all acts conservatory of their respective rights, even before their own obligations have become absolute.

A surety can claim nothing more than indemnification.

The rights of a surety subrogated to those of a creditor, whether payment was made before the obligation of the surety became absolute, or after, result from his original contract with his principal, and are restrained by it. Those of an endorser, not for accommodation, in the same situation, are under no restraint from his original contract with the maker, or acceptor, to wit, that the whole amount of the bill shoull be paid to him, or his order. *Aliter*, as to an accommodation endorser, who, being viewed as a surety, will be restricted to the sum actually paid by him.

No obligation or right can result to any one from an act or contract, to which he was not a party, until he manifests his intention to avail himself of such right.

Plaintiffs accepted a bill payable at a future period, which was endorsed by the payee to third persons, by whom it was endorsed to a Bank, which discounted the bill in their favor. The latter having paid the bill, before maturity, in notes of the Bank, which were under par, claimed the whole amount of the bill from the acceptors. *Held*, that plaintiffs did not, by the endorsement and discount of the bill, and the subsequent depreciation of the notes of the Bank, acquire *ipsis factis*, any more

than an inchoate and incomplete right to pay in such depreciated notes, not being parties to any act or contract from which such a right might result; that not having manifested any intention to avail themselves of the advantage which the depreciation of the Bank notes offered, until, by the payment of the bill, the endorsers had acquired the rights of the Bank thereto, plaintiffs were in the same situation in which they would have been, had the Bank transferred the note at any time after its discount; and that, by their acceptance, plaintiffs bound themselves to pay to the order of the payee, the whole amount of the bill, that the endorsers became entitled thereto by the transfer of the bill, that the Bank acquired their rights by the discount, and that, the endorsers, by the payment of the bill, acquired a legal subrogation to the rights of the Bank.

Ordinary endorsers are not placed on the same footing as sureties; nor can they, like the latter, claim the benefit of discussion.

APPEAL form the Commercial Court of New Orleans, *Watts*, J. The petitioners represent, that one Elam Bowman, drew a bill of exchange on them, in favor of A. L. Gaines, for $826 66, payable five months after date; that the bill was accepted by the petitioners, and endorsed by A. L. Gaines, to A. L. Gaines & Brother, who endorsed it to the Union Bank of Louisiana, by which the bill was discounted *for account* of A. L. Gaines & Brother; that the bill thus became the property of the Bank, and that due notice was given to the petitioners that the bill was there, payable at maturity, to wit, on the 7th—10th of August, 1842. They represent that, on or about the 11th July, 1842, before the maturity of the bill, the defendants gratuitously, and without being authorized by the petitioners, paid the bill, while in the possession of the Union Bank, in the depreciated notes of that institution; and that having thus possessed themselves of the bill, they deposited it for collection in the Bank of Louisiana, where the petitioners have been notified to pay the same, at maturity, in specie. The petitioners further allege, that by the said payment, before maturity, their obligation as acceptors, as well as that of the prior parties to the said bill, has been extinguished; that the defendants, the present holders, took the bill with full knowledge of all these facts; that they have no legal title to it, nor any right to demand payment thereof from the petitioners, who claim that the bill shall be given up to them to be cancelled and destroyed.

The petitioners prayed that the bill might be sequestered pending the suit, and be delivered up to them to be destroyed. The bill was filed on the 6th August, 1842.

The defendants answered by a general denial. They pleaded, in reconvention, that they are the holders and owners, for a valuable consideration, of the bill described in the petition, which they aver was transferred to them, in the regular course of business, before maturity, and under circumstances which entitled them to believe that all the parties thereto were bound by their signatures. They denied that they paid the note in Bank, or elsewhere, or knew of its having been paid, or of any fact calculated to excite their suspicion, or to deprive them of the rights of *bona fide* third holders of a negotiable instrument, acquired for a valuable consideration, before maturity. They pray that the plaintiffs may be condemned to pay them the amount of the note, and for general relief, &c.

The plaintiffs answered the demand in reconvention, by a general denial, annexing interrogatories to be propounded to the defendants, whose answers thereto were substantially : that the defendants received the bill from A. L. Gaines & Brother, between the 9th and 12th of July, 1842, and that they deposited it for collection in the Bank of Louisiana, on the 28th of July, 1842. That from the red marks and figures on the bill at the time when they received it, they concluded that it had been discounted in the Union Bank, and that it had been taken up by A. L. Gaines & Brother, who had had it discounted. That Gaines & Brother informed them, that they took up the bill because they were about to absent themselves for the summer, and were unwilling to risk being dishonored as endorsers, and not because they wished to speculate in the depreciation of the notes of the Union Bank. That the bill was received by the respondents, with two other notes, with a request to make certain payments for Gaines & Brother, amounting to about $710, and to reimburse the amount, and a balance of $315 35, previously due, out of the proceeds of the bill and notes. The bill was to be returned to Gaines & Brother, in case of non-payment, on their satisfying the debt due by them to the respondents. That no settlement or arrangement has been made with reference to the bill, except that the demand in reconvention is now conducted for the benefit of Gaines & Brother, though instituted at first for respondents' own account, as, since the filing of the demand in reconvention, they have collected from the other notes left in their

hands, sufficient to satisfy the debt due them by Gaines & Brother.

It was proved, that the notes of the Union Bank were at a discount at the time of the payment of the bill. *Chalin,* a note-clerk of the Union Bank, testified, " that the acceptance of the plaintiffs, discounted in the Union Bank of Louisiana, due the 7th—10th of August, 1842, being the draft in contest, was paid in said Bank on the 11th July, 1842. That it was understood, that the payment was made by or for account of the acceptors, though no inquiry was made on the part of the Bank, when the acceptance was paid. That drafts or notes discounted in the Union Bank, have never been negotiated or transferred by it. That the acceptance of the plaintiffs could not have been obtained from the Bank, but by payment, at the time said acceptance was paid ; and that the notes of the Union Bank were at a discount.

There was judgment in the Commercial Court dismissing the plaintiffs' petition, and in favor of the defendants, on their demand in reconvention, for the amount of the bill, with interest from maturity. The plaintiffs appealed.

*Bradford,* for the appellants. The evidence clearly establishes that the bill was *paid* on the 11th July, 1842. *Holland* v. *Peirce,* 2 Mart. N. S. 503. Civil Code, arts. 2048, 2130. The payment extinguished the obligation of the acceptors. See Ib. art. 2130, and the case from 2 Mart. N. S. 2 Kent's Comm. 616, 617. Chitty on Bills, 543. 7 Toullier, 125. Liv. 3, tit. 3, chap. 5. §. 102, 12 Duranton, 29, tit. 3, § 18. 32 Merlin, Rep. de Jurisprudence, p. 42, *Verbo* Subrogation de Personne. It is contended, that the endorsers who paid the bill in the Union Bank, were so bound on the bill as endorsers, that they had an interest in paying it, and that consequently, they were legally subrogated, on payment, to the rights of the holders, whom they paid. But it is answered, that the obligation of an endorser, is conditional only, and does not arise, till after protest of the bill, and legal notice of its dishonor ; and, therefore, he cannot pay the bill, with the benefit of a legal subrogation, till his liability has become fixed. Such is believed to be the settled doctrine of the French law on this point. 12 Duranton, 172.

But should it be held, that a legal subrogation does take place

in favor of the endorser, who anticipates his liability by payment of the bill before maturity, what is the extent of the rights which he acquires by the subrogation ?  He pays as surety.  It is well settled, that the surety who pays for his principal, is entitled to an indemnity only.  He can recover what he has paid, and no more. In no case, can he speculate on his principal.  If, therefore, he has paid the debt in a depreciated currency, he can only recover the specie value of what he gave in payment.

Such is the law, as to the rights acquired by subrogation, in every case.  In 7 Toullier, 199, it is said, that " subrogation is founded on the grand principle, that it operates to no person's prejudice, or, at least, that it does not affect the condition of the debtor, and his other creditors.  So far as they are concerned, it is necessary that things remain, after the payment, in the same state in which they were previously."  It follows, that no person can acquire by subrogation, whether legal or conventional, the right to be paid in a more valuable currency, than the party to whose rights he succeeds, was entitled to demand, and in which he made payment himself.

On this subject, see a decision exactly in point, reported in Sirey, 1808, vol. 2, p. 154.  *Case of M. de Talleyrand Périgord.* See also, Merlin, Questions de Droit, vol. 14, (Brussels ed.) page 387.  Verbo, *Subrogation de Personne.*

*Benjamin,* for the defendants.

MARTIN, J.* This case presents two questions of law :

*First.* Whether an endorser who pays a bill of exchange before maturity, acquires a legal subrogation ?

*Second.* Whether, if he has not paid the full amount of the bill, or if he has paid it in depreciated notes, he may require from the acceptor, more than he has paid, or more than the value of the depreciated notes ?

The plaintiffs are appellants from a *judgment,* by which the defendants have recovered, in reconvention, the whole amount of a bill of exchange accepted by them, discounted in Bank, and, before maturity, paid by the endorser, or his agents, the defendants.

*BULLARD, J. was absent, by leave of the Court.

The appellants' counsel has relied on the case of *Holland* v. *Peirce*, 2 Mart. N. S. 499, in which this court held, that the maker of a note was discharged by the payment of it by an endorser, a short time before the closing of the bank, on the day of maturity. The plaintiff's counsel, in that case, did not urge the legal subrogation his client obtained by the payment, nor was the right of subrogation attended to by the court.    The defendant's counsel, in that case, was an able and experienced one.    When a case is argued by persons of that character, this court often contents itself with noticing the defence they make, without loosing much time in seeking whether there are not other points than those raised, on which a different judgment ought to be given.    We did so in that case.    It is contended, that the payment by an endorser, before maturity, gives him no legal subrogation, because, till then, demand, protest and notice, he is not *bound*.    Our Civil Code treats of the different kinds of obligations, and among them, of conditional ones.    These are, therefore, obligations known to the law. They are susceptible of being released, transferred, and of passing to heirs before maturity.    But the counsel for the plaintiffs urges, that the obligation of an endorser and a surety are conditional obligations, which the law classes among obligations contracted on a suspensive condition, because they depend on a future and uncertain event, or on an event which has actually taken place without its being yet known to the parties ; that in the former case, it cannot be executed till after the event; in the latter, it has its effect from the day on which it was contracted, but it cannot be enforced until the event be known, Civil Code, art. 2038 ; that the declaration, in the second case, that the obligation has its effect from the day it is contracted, is an affirmative pregnant with a negative ; that, in the first case, the obligation has not its effect in the same manner.    It is true, the obligation of an endorser, or a surety, cannot be executed, until after the event on which it becomes absolute.    It, however, exists, for it may be the object of a compromise, or transaction.    The rights of the endorser, or surety, against the maker or principal, exist, however, before the obligation of the former becomes absolute.    The Code provides, that " an obligation may be discharged by any person *concerned in it*, such as a co-obligor or a security," art. 2130.    It is clear, from the

words used by the Legislator, that he recognized the right of paying before the obligation of the co-obligor or surety became absolute ; for then, the obligation is something more than one in which the co-obligor or surety are *concerned*—it is their own.   There was no necessity of our being informed that one *may* pay his own obligation.   The co-obligor spoken of in the above article must be a conditional one ; for, if his obligation was absolute, it would be equally useless to tell us he *may* discharge it.   There is an evident error of the press in this article, the word *co-obligee*, being used instead of *co-obligor*, as the sense, and the corresponding article in the French text, manifestly show.   The Code places the endorser and the surety on the same line ; both are conditional obligors, of the creditor of the maker and principal, and at the same time, conditional creditors of the latter.   The Code, in the paragraph before us, impliedly, but virtually says, that the payment by a co-obligor, surety, or any person, like them, concerned in the obligation, acquires a legal subrogation, for it immediately after informs us, that payment by a person, no way concerned in the obligation, does not give rise to subrogation. The endorser and surety being, as we have seen, conditional creditors, may perform all acts conservatory of their respective rights, before their own obligation has beccme absolute, Civil Code, art. 2037.   Although the obligation of the conditional debtor, by endorsement, has no effect against him, until he becomes an absolute one, and no conservatory acts can till then be exercised against him, he has, however, rights which he may exercise, as that of paying the debt, and resorting to conservatory measures.   Indeed, payment may be for him a conservatory measure, for it may enable him to arrest the person, or property of the maker in another State.   He may secure himself by selling the note or bill, to a debtor of the maker or acceptor, who may avail himself of it by a plea of compensation or reconvention.   Although the endorser be not expressly named in the Code, in the parts of it which speaks of legal subrogation, payment, or cautionary measures, which I have quoted, I think that he is included in art. 2157, No. 3, as a person bound with, or for the maker or acceptor ; for the obligations the Code speaks of, are all obligations—whether absolute, conditional, several, joint and several, divisible, or indi-

visible, without any exceptions ; and that he is also included in art. 2130, which speaks of any person concerned in the obligation, such as a co-obligor or surety, who are only named *exempli gratia.*

I conclude, that a legal subrogation results from the payment before maturity, of a bill of exchange, or note, by the endorser.

II. As to the second question, to wit, whether the party thus subrogated may require of the acceptor or maker, more than he has actually paid ? The counsel for the appellants contends, that the first Judge erred, in condemning them to pay the whole amount of the bill, instead of reducing the endorser's pretentions to the value of the depreciated notes he gave in payment. He has referred us to a number of French authorities, which establish that the surety can claim nothing but indemnification. This is certainly true, and there was no necessity for his crossing the Atlantic to seek the means of establishing his proposition. *Nolté et al.* v. *Their Creditors,* 7 Mart. N. S. 9. He has invoked Toullier, vol. 7, p. 199, who says that, " subrogation is founded on the grand principle, that it operates to no person's prejudice, or, at least, that it does not affect the condition of the debtor and his other creditors. So far as these are concerned, it is necessary that things remain after the payment, in the same state in which they were previously." The rights of a surety, subrogated to those of a creditor, whether the payment has been made before the surety's obligation became absolute or after, result from the original contract between him and the principal, and are restrained by it. Those of the endorser, in the same situation, are under no restraint from his original contract with the maker, or acceptor, to wit, that the whole amount of the bill should be paid to him, or his order. The plaintiffs, by the defendants' discount of the bill, the subsequent stoppage of specie payment by the Bank, and the consequent depreciation of its notes, did not acquire *ipsis factis* any more than an inchoate and incomplete right to pay in its depreciated notes, for they were not parties to any act, or contract, from which this right might result, and no obligation or right can result to any one from an act, or contract to which he was not a party, until he manifests his intention to avail himself of such a right. *Invito beneficium non datur.* Pothier on Obligations.

Thus, if my vendee, selling the estate, binds his vendee to pay to me the price which remains unpaid, no absolute right will accrue to me, until I accept the obligation the last vendee incurred; and, at any time before this acceptance, the parties to the second sale may cancel it, and also my inchoate right. The plaintiffs having never manifested any intention to avail themselves of the advantage which the depreciation of the Bank notes offered, until, by the payment of the note, the defendants acquired the right of the Bank thereto, were exactly in the same situation as they would have been, if, at any time after the discount, the Bank had transferred the note. In the case of *Nolté et al.* v. *Their Creditors*, above cited, the accommodation endorser, who was bound with, and for the insolvents, and, as such, had been subrogated to the rights of the holder of the bill by payment, was restrained in his recovery from the syndics, to the sum which he had actually paid to the holder, because his original contract with the insolvents was only to indemnify him from the consequences of his endorsement. In the case before us, the plaintiffs, by their acceptance, bound themselves to pay to the order of the payee, the whole amount of the bill; the endorser became entitled thereto by the transfer of the bill; the Bank acquired his right by the discount; and the defendants, a legal subrogation to the rights of the Bank, by the payment of the bill. It is not pretended, that the defendants were accommodation endorsers. If they were, the plaintiffs might rightly invoke the law, which restrains the claim of a surety to a full, but bare indemnification. Ordinary endorsers are not placed, in this respect, on the same line as sureties, neither can they, like the latter, claim the benefit of discussion.

Upon the whole, though on different grounds than those which have led the Commercial Court to the conclusion it has arrived at, I am of opinion that its judgment should be affirmed, with costs.

Morphy, J. I concur in the opinion *delivered by* Judge Martin.

Simon, J. I concur also in opinion with Judge Martin.

Garland, J., *dissenting*. A. L. Gaines & Brother, held an accepted bill of the plaintiffs. Sometime before its maturity, the holders endorsed it, and had it discounted in the Union Bank of Louisiana. About a month before the bill was due, the Bank having then suspended specie payments, and their notes being at

a heavy discount, the endorsers went to the Bank, and took up the bill with its depreciated notes, and then placed it in the hands of the defendants, as their agents, who deposited it in the Bank of Louisiana, where specie was demanded for it. The clerk to whom the note was paid says, it was understood, " that the payment was made by, or for account of the acceptors, though no inquiry was made on the part of the Bank." He further says, that the bill could not have been obtained except by a payment, as the Bank never transferred or negotiated the notes or bills it held.

The plaintiffs contend, that this was a payment made for their benefit, and that the bill has been discharged, and they sue to have it surrendered to them. The defendants deny, that the payment was for the use of the plaintiffs, and by a demand in reconvention, claim judgment for the amount of the bill. The defendants had a judgment on their demand in reconvention, and the plaintiffs have appealed. The reason given by Gaines & Brother, for taking up the draft was, that they were about to leave the city for the summer, and did not wish to have their endorsements out in their absence, and that it was not to speculate by paying the draft in depreciated notes, that they paid it. They have not shown, that the credit of the plaintiffs was at all doubtful, or that there was the slightest probability of the bill's being dishonored ; on the contrary, they placed it in the hands of their agents, relying upon its payment to meet engagements of their own.

When I first examined this case, I thought it a stronger one for the plaintiffs, than that of *Holland* v. *Peirce*, 2 Mart. N. S. 499. Subsequent reflection has satisfied me of the correctness of my first impressions. In that case, which was a payment made by an endorser before maturity, but within the last hour previous to a protest, the court said, that the payment enured to the benefit of the maker, and that no matter from what motives it was made, the note could not afterwards be protested. In that case it was held, that the plaintiff could not recover, and in this, I do not see how the plaintiffs in reconvention can be entitled to a judgment, unless the decision in *Holland* v. *Peirce*, be overruled. The most favorable point of view in which I can put this

case for Gaines & Brother, is, that they, in taking up the bill at the Bank, acted as the agents of the plaintiffs, and that they are entitled to indemnity from them, that is, for the value of what they paid. But if they contend, that they paid the bill, in my opinion they cannot recover at all. The simple inquiry is, was the bill paid, or was it purchased. That it was not purchased, is clearly established by the evidence of the Clerk of the Union Bank, who says, that it was not the intention to negotiate or transfer the bill, and that had he not supposed the payment was made for, and on account of the acceptors, it would not have been given up. Had it been intended to sell the bill, the assent of the Bank was necessary, and that assent could not be given by the Clerk who received the payment. I, therefore, take it for granted that it was a payment, and being so, the obligation was discharged: what obligation the payment created between the parties afterwards, is another question.

Chitty tells us, that payment may be made by any one for the honor of the drawer, or any of the endorsers; but that it is always made after protest, and that no person should pay in honor of another, before the bill has been protested. The simple reason is, that neither the credit nor honor of any person is at stake, until there is a protest. Pothier, Traité du Contrat de Change, No. 114, says: " *Celui qui acquitte une lettre de change pour l'honneur du tireur, ou de quelqu'un des endosseurs, doit, pour obliger envers lui,* actione negotiorum gestorum, *celui pour l'honneur de qui il l'acquitte, la laisser protester par le porteur avant que de la payer.*" These principles are, I believe, recognized by every writer on bills of exchange.

I am perfectly aware, that there are a great variety of obligations, in which parties may be bound in different modes; but I do not understand the responsibility of an endorser, previous to protest, as being similar to that of a co-obligor or security. The latter are directly bound; the former only contingently; and he may never be, if he lets the acceptor of a bill or the drawer of the note alone to pay it. A security has no right to recover from his principal more than he pays, nor can he make the obligation more onerous than it was in the hands of the creditor. Such, I understand, to be the law, as relates to co-obligors also.

The 2130th article, of the Civil Code, says, that " an obligation may be discharged by any person connected in it, such as a co-obligor or a security." At the time when the payment was made in this case, what interest or concern had Gaines & Brother in the bill ? They had parted with their ownership of it by having it discounted. Their names were on it to be sure; but they were not bound for its amount in any way, until after maturity and protest, and this last event might never occur.

The plaintiffs in reconvention contend, that under article 2157, of the Civil Code, they are subrogated, of right, to all the rights of the Union Bank against Wiggin & Davenport. That article says, that " subrogation takes place of right for the benefit of him who, being bound with others, or for others, for the payment of the debt, had an interest in discharging it." The mere fact of the name of Gaines & Brother being on the bill, did not, in my opinion, create an interest previous to maturity. They were in no manner responsible. They could not be sued, or called on to give security for the amount of the bill ; nor had the Bank a right to take any step towards them. If there was any other interest, than that arising from the endorsement, it ought to have been shown by testimony, which has not been offered. I give no credit to the reason stated for paying the bill. I have no doubt it was a speculation, and being such, I cannot give it my assent. This court have said, that an accommodation endorser cannot recover more of the drawer than he actually pays. He is entitled to indemnity only. 7 Mart. N. S. 12, 499. I now ask, what would be said of such an endorser, who, if the note his name was on was held by one of those banks whose notes are at a heavy discount, should go into the market, and purchase them, and a day or two before the maturity of the note pay it, and then claim the full amount from his principal ? I do not believe any court would give him a judgment under such circumstances ; yet the accommodation endorser has as much interest in discharging the note as any other endorser, and towards the Bank, or the holder of the note or bill, stands precisely in the same situation.

The most equitable and lenient view I can take of this case is, that the judgment should be reversed, and the case remanded, for the purpose of ascertaining what was the actual depreciation of

the notes in which the bill was paid, and of allowing the reconve-
nors the value of them.

*Judgment affirmed.*