On the Merits.
Watkins, J.
This case is the same one we had before us, and the motion to dismiss which, for want of jurisdiction, we decided on the *1260 16th of December, 1895, and we refer to our opinion thereupon for a statement of facts applicable to the merits.
I.
The first thing to be considered is defendant’s exception to the capacity of J. B. Vinet, public administrator of the parish of Orleans, to be appointed dative testamentary executor of the succession of A. W. Weems, Sr., deceased, his contention being that he had no power or authority conferred upon him by law to qualify or act as executor of said succession, and. that he had, consequently, no capacity to institute this suit and stand in judgment.
For this position he assigns as a ground that Weems had no domicile or residence in the parish of Orleans at the time of his death, or prior thereto, and that he had no property situated in said parish at the time of his death. That, on the contrary, he was, at the time of his death, a citizen and resident of the parish of St. Tammany, and had been for a great many years prior to his death, and that his principal establishment was therein situated. That he never had, nor ever acquired a domicile elsewhere, and his succession was opened therein by his death, and that same could not be lawfully administered in the parish of Orleans.
From the foregoing it is clear that the want of capacity alleged consists in the fact that the public administrator of the parish of Orleans could not be legally appointed dative testamentary executor for a succession of a deceased citizen and resident of the parish of St. Tammany, not that his appointment was in itself irregular, or illegal, as not founded upon a proper order of court or the like.
On this question considerable testimony was taken which, in the view we entertain of the legal questions involved, will not be necessary for us to consider, and that view is that unless the appointment be absolutely void his acts can not be questioned by a litigant in a court of justice.
In Succession of Dougart, 30 An. 268, it was said:
“As to illegality of the appointment of the executrix it is only necessary to say that the question can not be raised in this indirect :and collateral way. Whether legally or illegally done she was appointed and qualified and must be treated as the lawful executrix vnntil her appointment is revoked in a direct action.”
In the matter of the estate of Altemus, 32 An. 364, it was said:
*1261 “It seems to be considered, and indeed we do not think it can be denied, that unless the appointment of administrator or curator is absolutely void the acts d ne by them in such capacities are legal and binding; for it is now elementary that the mere illegality of the appointment will not vitiate the acts done under it. This is so true that the law will not allow a suspensive appeal from a decree appointing such official, but declares that such decrees shall have immediate effect, and, therefore, regardless of the legality or the illegality of the appointment.”
In Cloutier vs. Lemée, Syndic, 33 An. 305, it was said:
“ Inquiries touching the legality of (the defendant’s) appointment are irrelevant. While actually exercising the office he must perform its duties, and the illegality of his appointment will not vitiate his acts.” Citizens Bank vs. Bry, 3 An. 633; Gradnigo vs. Moore, Curator, 10 An. 670; Dorsey vs. Vaughan, 5 An. 156; Beard vs. Gresham, 5 An. 611; Succession of Lehman, 41 An. 987.
On the foregoing authorities we are of the opinion that the defendant can not, in this collateral manner, attack the legality of the executor’s appointment, and that he has the undeniable right to institute this suit and stand in judgment, conceding for the argument that the testimony shows that his appointment was illegal on the ground stated.
If every party sued by a succession representative could litigate his capacity, its settlement might be indefinitely prolonged.
The judge a quo properly overruled the exception.
II.
The principal question for decision is whether, in the sale from W. L. Wooten to the defendants, on the 12th of January, 1893, the latter assumed the payment of the nine notes of the vendor, Wooten, and all of his obligations as purchaser of the property from the deceased
They deny that they incurred any personal liability for the- payment of those notes to Weems, the deceased, or to his executor since his death; and aver that they are third possessors of the property mortgaged to secure their payment, the enforcement of which can only be obtained in an hypothecary action. Or in other words, while they admit the binding force of the recitals of the deed under which they acquired the property, and that they became thereby bound for the amount of their vendor’s debt and mortgage as part of *1262 the price they agreed to pay therefor, they aver that there has not been at any time, nor is there now, any agreement on contract on their part “ to pay to the said Weems, deceased, or his heirs or representatives, the notes signed by W. L. Wooten, on the 25th of August, 1890,” etc.
They further aver that the stipulation of said deed did not constitute a novation of the debt by the substitution of themselves as debtors in the place of Wooten, the maker; and that during the lifetime of Weems they were never so considered, accepted or treated by him.
It appears from the act of sale that Wooten conveyed the proPetry to the defendant with full subrogation to all of his rights and actions against all previous vendors, for the price of six thousand seven hundred and ninety-nine dollars and fifty-six cents, of which the sum of five hundred dollars was paid in cash, and for the balance of said purchase price the said Bres and Richardson thereby assumed and agreed to pay nine promissory notes and interest thereon at the rate six per cent, per annum of six hundred dollars each, payable respectively in two, three, four, five, six, seven, eight, nine and ten years from the 28th of August, 1890, being nine of the ten notes given by the said Wooten as the purchase price of said land from said Weems, which notes are secured by mortgage and vendor’s lien on said land, and said mortgage and vendor’s lien were thereby kept in force and perpetuated until the full and final payment of said notes and interest.
The deed further recites that: “It is further agreed that the present purchaser shall have the same right (as that) given to said Wooten by the said Weems (of) calling in and paying any and all of said notes at their option, and at any time they may choose, on paying principal and interest accrued up to the time of such pay - ment or redemption.”
That act is one under private signature, and it bears the signatures of Wooten, as well as that of Bres and Richardson.
The parol testimony shows that this act of sale was executed immediately previous to the death of Weems, and that same was based upon the fact that Wooten had requested of Weems a ninety days’ extension of the payment of his second note, and that the defendants had consented to purchase the property at the price stipulated if the extension was granted. That Weems granted the *1263 proposed extension shortly previous to his departure from New Orleans, and the defendants having been notified of that fact accepted the deed from Wooten, and had it recorded just before Weems’ death. That immediately after his death Weems’ attorney called to see Richardson in reference to the matter, and expressed regret that the sale had not been perfected, and Richardson informed him that it had been completed, and furnished him the deed, as confirmation of the fact.
Objection was made by defendants’ counsel to the introduction of this testimony, on the ground that parol could not be offered to prove a state of facts at variance with the recitals of the act of sale. The judge a quo overruled the objection on the ground that this offer of testimony did not violate the rule of law invoked, because it was only intended to show that Weems was apprised of the assumption by the defendants, and had consented to extend the payment of the note, at the time past due, on the faith of it.
In thus ruling the judge committed no error. The obligations of the defendants to Wooten were incorporated in the act of sale, but Weems was not a party thereto and did not sign it. But being the holder of the notes and Wooten having applied for an extension of the one first falling due, Weems was interested to know his means of making payment when the extension should have expired; and what more likely than that he should have informed Weems of his intended sale to the defendants and of the terms of the same, and that Weems should have consented to the extension upon that ground.
The statement of Richardson was taken, also, without materially altering the force of the plaintiff’s evidence on that question.
We are of opinion that the evidence discloses the existence of negotiations between Weems and Wooten, with respect to the extension of the payment of the second note, which went to its maturity on the 28th of August, 1892, and the payment of which the defendants assumed in the act of sale from Wooten on the 12th of January, 1893, four and one-half months after its maturity.
A witness for the plaintiff distinctly states that “ when the second note came due (he thinks) there was an extension then. He (Wooten) concluded to sell out the island, and Richardson and Bres, who were friends of his, offered to buy the island if some short extension could be obtained on the note. Mr. Weems was willing, as *1264 these letters will show, which I offer, to grant this extension, and they made the purchase of the island and recorded the deed, assuming Wooten’s obligation under the mortgage and these unpaid notes, and Wooten went to the country and took fever or something and died up there. Shortly after Weems died.”
This statement makes it clear that Weems was still living when Wooten executed a title to the defendants, because Wooten’s signature is appended to the deed, and he subsequently died prior to the death of Weems.
If an extension of the second note had not been already agreed upon between Wooten, maker, and Weems, payee, with the knowledge and concurrence of Bres and Richardson, it is unlikely that Richardson should have employed the phraseology that he used in the act of sale which he prepared for the parties to sign — that is to say, that the sale was made in consideration of the sum of six thousand seven hundred and- ninety-nine dollars and fifty-six cents, of which five hundred and twenty-eight dollars and twenty-six cents was to be paid in cash, and the remainder to consist in the assumption of the payment of nine notes, one of which was then more than three months overdue.
Defendants’ counsel cites us to the following authorities as governing this branch of the case, viz.: Pothier on Obligations, No. 57; Story on Contracts, Sec. 130; Gravier vs. Gravier, 3 N. S. 207; Tiernan vs. Martin, 2 Rob. 523; Mitchell vs. Cooley, 5 Rob. 240; Wiggin vs. Flower, 5 Rob. 406; Citizens Bank vs. Miller, 44 An. 199; R. C. C. 1890, 1902, 1779, 2201.
Those decisions proceed upon the same line and are to the effect that stipulations pour autrui to be of avail must be accepted by the beneficiary; but they go no farther nor say anything more than is expressed by the Code.
It declares that “ a person may also, in his own name, make some advantage for a third person the condition or consideration of a commutative contract or onerous donation; and if such third person consents to avail himself of the advantage stipulated in his favor, the contract can not be revoked.” R. C. C. 1890. (Our italics.)
In our opinion the evidence satisfactorily shows that Weems consented to avail himself of the stipulation made by the defendants and that same is binding on them.
*1265 hi
Complaint is made of the judgment having been rendered against the defendants in solido, whereas their contract is joint. This complaint is well founded and the judgment should be amended so as to make it only joint.
Complaint is also made of the judgment that it decrees plaintiff to have a right of pledge, whereas there is nothing in the contract to justify it.
This complaint is also just and well founded and the decree must be amended in this particular.
It is therefore ordered and decreed that the judgment appealed from be so amended that defendants be decreed jointly to pay the plaintiffs’ demand instead of in solido, and so amended as to eliminate all recognition of the existence of plaintiffs’ right of pledge.
It is further ordered and decreed that the judgment be in all other respects affirmed, and that plaintiffs be taxed with the cost of appeal.