### JOSEPH PURL *v.* D. MILES et al.

Where the quantity of land is not expressed in the title, it may be established by proof of the possession which the party has had under it. C. C. 845.

Parol evidence is admissible to establish the boundaries and limits assigned by the plaintiff himself, who was the vendor of both tracts. C. C. 840.

To establish a title under a sale by virtue of a writ of *fi. fa.*, no other part of the record need be produced, it being for the party questioning the validity of such sales, to prove by other parts of the record, the irregularities on which he relies to destroy the presumption of *omnia rite acta.*

APPEAL from the District Court of West Feliciana. This cause was tried by a jury, before *Sterling*, J. *C. Ratliff*, for plaintiff and appellant. *J. A. Patterson*, and *Brewer & Collins*, for defendants.

OGDEN, J. (VOORHIES, J., absent.) The plaintiff claims a tract of land in the possession of the defendant *Cook*, alleging that it forms part of a tract of 815 acres, which he, the plaintiff, sold to *William D. Rea*, on the 19th of December, 1837, and subsequently repurchased at a Sheriff's sale, to satisfy his judgment against *Rea* for the purchase money. The defendant denies that the land he is in possession of, is embraced by the title acquired by the plaintiff under the Sheriff's sale, and claims to derive his title from a sale made by the Sheriff under an execution issued on a judgment rendered in favor of the plaintiff in this suit against *W. M. Christian*. He further avers, that *Christian* bought the property from *Burgess Noles*, by a notarial act of sale passed on the 26th of December, 1839, and plead the prescription of ten years.

The plaintiff, in 1845, transferred to the defendant a judgment he had obtained against *Christian*, stipulating in the transfer that there should be no recourse or lien, if the purchase of the judgment by *Cook* should be an entire loss. Under that judgment, the defendant, *Cook*, caused an execution to issue

and purchased the land belonging to *Christian*, in satisfaction of it. In both the sales from *Noles* to *Christian*, and the adjudication by the Sheriff to the defendant, the land is described as containing 265 acres. In the former title, it is described as bounded above by the heirs of *Brenton*, and below by lands belonging to *W. D. Rea*, with reference to natural objects to designate those boundaries, and in the latter as having a front of seven arpents on the river Mississippi. The tract of land subsequently purchased by the plaintiff, is described as containing eight hundred and fifteen acres, adjoining lands of *Burgess Noles*. As this sale to the plaintiff, under his execution against *Rea*, was made in 1850, long after the deed from *Noles* to *Christian*, and the Sheriff's sale to *Cook* had been placed on record, and as it is shown by the evidence that *Noles*, *Christian* and *Cook*, had all been in possession of the land according to the boundaries of the title made by *Noles* to *Christian* in 1839, it would be inferred that the plaintiff, when he acquired the tract of *Rea*, described "as adjoing lands of *Burgess Noles*," bought with reference to the land then and now possessed by the defendant as the upper boundary. It is however alleged, that *Burgess Noles* acquired all the title he ever had, by a sale the plaintiff made to him on the 8th of August, 1836. On referring to that deed, we find an extremely vague and uncertain description of what was sold. *Joseph Purl* and wife sell to *Burgess Noles*, land described as follows: "One acre of land on the Mississippi river, being the upper part of the tract sold to this appearer on the 13th June, 1835, in the parish of Avoyelles, by *Peter Leglise*, and runing back forty acres. They further sell to said *Burgess Noles*, all that the said tract of land as above described contains over and above 1,055 acres, making it, not to be mistaken, one acre front, running back forty acres on the upper line, adjoining the land of *Brenton's* heirs, or lastly owned by them, and then all that said tract contains over and above said one thousand and fifty-five acres." *Noles* was to have the land of *Brenton's* heirs as his upper line, a certain quantity of one acre front by forty in depth, and besides an uncertain quantity depending on how much land there was in the whole tract purchased by *Purl* from *Leglise*. Afterwards, on the 29th May, 1837, the plaintiff sold to *James S. Purl* 200 acres, described as being "the lower part of the land purchased by *Joseph Purl* of *Peter Leglise*;" and on the 19th of December, 1837, he sold to *W. D. Rea*, 815 acres, described as adjoining lands of *Burgess Noles*, and running down for compliment and adjoining below lands of *James S. Purl*, being the same tract purchased by said *Joseph Purl* of *Peter Leglise*." It is shown by the testimony of *Rea* and of another witness, that when the last sale took place, the plaintiff pointed out to *Rea*, as the upper corner of the tract he was selling him, an oak tree, which he also said was the lower corner of the tract he had previously sold to *Burgess Noles*. At that time *Noles* was living on the land, and one of the witnesses states that the line from the oak tree ran near *Noles'* garden. The possession of *Noles* and those who afterwards derived title from him, as shown by this testimony, is not inconsistent with the written title from the plaintiff under which they held. The plaintiff did not think proper to produce the title of *Leglise*, by which it could have been ascertained exactly how much land *Noles* acquired by his purchase. We think the burden of proof rested on the plaintiff, who was the author of *Noles'* title to show, by the production of his own title from *Leglise*, the exact quantity of land derived by *Noles*, under the sale made to him by the plaintiff. The township map shows two surveys below the *Brenton* tract, which, together,

contain an area of 1284 acres, and if the title from *Leglise* embraced both of these surveys, *Noles* would have had a right to exactly the quantity of land which he sold to *Christian*. When the quantity of land is not expressed in the title, it may be established by proof of the possession which the party has had under it. Art. 845 C. C. Parol evidence was admissible to establish the boundaries and limits assigned by the plaintiff himself, who was the vendor of both tracts. Civil Code, Art. 840. *Guyoso* v. *Baldwin*, 8 N. S. 660; and the objection taken by the plaintiff to the competency of *Rea* as a witness, on the ground that he had once been an owner of the land, and was warrantor of the title, was, we think, properly overruled. The defendant offered in evidence as muniments of his title, the judgment, writ of *fi. fa.* and Sheriff's return in the suit of *Joseph Purl* v. *W. M. Christian*, which was objected to, on the ground that a part of the record could not be received, if the party against whom it was offered, required the production of the whole record. It is well settled, that to establish a title under a sale by virtue of a writ of *fi. fa.*, no other part of the record need be produced, it being for the party questioning the validity of such sale, to prove by other parts of the record, the irregularities on which he relies, to destroy the presumption of *omnia rite acta*. The evidence was properly received.

The verdict of the jury in favor of the defendant being in conformity with the views we entertain of the relative titles of the parties, it is unnecessary to examine the plea of prescription also relied on by the defendant.

It is therefore ordered and adjudged, that the judgment of the court below be affirmed, with costs.