(41 South. 120.)

No. 15,828.

FONTELIEU v. FONTELIEU et al.

(March 12, 1906. On Rehearing, April 9, 1906.)

1. EXECUTION—SALES — TITLE OF PURCHASER —PROOF—SECONDARY EVIDENCE.

To establish a title as derived from a sale by the sheriff, one must show a judgment rendered by a court of competent jurisdiction, a writ issued in conformity thereto, and a sale by the sheriff pursuant to the writ; but, where the original records are shown to have been lost or destroyed, the existence of those elements, or either of them, may be proved by secondary evidence.

2. SAME—PETITORY ACTION—EVIDENCE—SUFFICIENCY.

Where, after a lapse of nearly 30 years, the plaintiff in a petitory action, in support

of a title derived from a sale under execution, proves the loss of the record in which the execution issued, produces certified copies of a judgment against the former owner of the property, and a sheriff's deed, both from the books in which said copies are required to be made, and produces the clerk's "charge docket," showing the issuance of a writ of fieri facias, as of date corresponding with that recited in the sheriff's deed, and there is nothing to suggest any want of jurisdiction in the court or irregularity in the proceedings, the title will be considered established.

3. MORTGAGES — FORECLOSURE — JUDGMENT AUTHORIZING SALE—TITLE OF PURCHASER— PRESCRIPTION—COLOR OF TITLE—ESTOPPEL.

The commercial firm of A., B. & C., through A., one of its members (whose authority does not appear), purchases, by notarial act, certain real and personal property from D. who retains a mortgage to secure a portion of the price, and E. intervenes in the act and grants a mortgage containing no pact de non, etc., on property belonging to her, as further security to D. Nine years later, and after the time has elapsed within which the payments under the original contract were to have been completed, judgment is rendered, in a suit entitled "D. v. B. et als.," upon the confession of the "defendants" (in which, however, no other defendant than B is named), condemning the "defendants" to pay a sum of money, subject to certain credits, to be indorsed on the judgment (the amounts of which are not specified, and which are not so indorsed), and also ordering that the mortgaged property be seized and sold, though it appears that in the meanwhile another contract had been entered into, by which, apparently (the act not being produced), the payments under the original contract had been extended to a period subsequent to the date of the judgment so rendered. Nine years later still, and after the property mortgaged by E. had been sold under execution to F., a third person, and is under administration, in the parish court, as belonging to his succession (of which C. is administrator), it is sold under a writ of seizure and sale, issuing from the district court (of the new parish to which the case had been transferred), and is purchased by G., the wife, separate in property of B. The entire record in the suit of D. v. B. et als., save the judgment, having been lost, and there being no proof, aliunde, connecting E. therewith, *held* that no judgment is shown to have been rendered against E.; that the district court was without jurisdiction to order the sale of the property mortgaged by her, but then owned by the succession of F., and under administration in the parish court; that the sheriff's deed to G., with the judgment mentioned and the writ of seizure and sale (the existence of which latter is assumed to have been proved), do not constitute the just title required as the basis of the prescription of ten years; and that G. and her heirs have been, and are, possessors in bad faith, liable for rents and revenues from

the beginning of their possession. *Held*, further, that the heir of F. is not estopped to assert the nullity of the title set up by the heirs of G. by reason of the fact that F. had made certain payments on the judgment, or contract, in favor of D., and had been, in a measure, subrogated to his rights thereunder.

(Syllabus by the Court.)

Appeal from Nineteenth Judicial District Court, Parish of Iberia; James Simon, Judge.

Action by Mrs. Annette Fontelieu against Albert Fontelieu and others. From a judgment for defendants, plaintiff appeals. Reversed.

Weeks & Weeks and Burke & Burke, for appellant. Louis Octave Hacker, Louis Tascar Dulany, Foster & Broussard, and Albert Voorhies, for appellees.

### Statement.

MONROE, J. Plaintiff, as the sole surviving heir of her father, Paulin Fontelieu, and of her mother and brother, brings this petitory action to recover (with the rents and revenues) a tract of land situated in New Iberia, which, she alleges, was acquired by her father as community property at a sale made by the sheriff in January, 1873, under an execution in the suit of Wallace & Co. v. Mrs. Jean (Leontine) Fontelieu, and of which she alleges that the defendants and their ancestors and authors are, and have been, in illegal possession since 1875. The defendants, Albert Fontelieu and Mrs. (Widow) Charles Fontelieu, tutrix, answer separately, in effect that plaintiff has no title to the land claimed, that the same was acquired by Mrs. Ernestine Fontelieu, wife, separate in property, of Theodore Fontelieu, and mother and grandmother of the defendants Albert and Theodore Fontelieu, respectively (the latter being the minor child of Charles Fontelieu, deceased), at a sale made by the sheriff August 7, 1875, under a writ of seizure and sale issued by the district court for the parish of Iberia in execution of a judgment

rendered September 29, 1866, by the district court of the parish of St. Martin in the matter of Baptiste Cavaillez v. Laodice Fontelieu et al., which judgment made executory a special mortgage on the property in question granted by Mrs. Leontine Fontelieu and duly recorded, first, in the parish of St. Martin, and, subsequently (upon the creation of the latter), in the parish of Iberia. They allege that plaintiff's father was party to an act whereby he recognized the validity of said mortgage, and that he and those claiming under him are thereby estopped with respect to the pretensions here set up. They further allege that Mrs. Ernestine Fontelieu and those claiming under her have been in possession of the property, as owners, in good faith, and under a just title, for more than 20 years, and they plead prescription and pray for judgment. Plaintiff and defendants alike aver that most of the records and documents constituting their muniments of title have disappeared, and that they must rely upon secondary evidence.

The facts, as we find them from the admissions and evidence in the record, are as follows:

The land in question is part of a larger tract which was owned by Mrs. Leontine (Miguez) Fontelieu, wife, separate in property, of Jean Fontelieu, and mother of Paulin, Theodore, Laodice, and Zulme Fontelieu (the last named being the wife of Alphe Cestia). In 1857 Baptiste Cavaillez sold to the commercial firm of Cestia & Fontelieu Freres, composed of Alphe Cestia and Laodice and Theodore Fontelieu, certain real estate, as also a stock of merchandise and other movable property, all situated in the town of Abbeville, parish of Vermillion, for the aggregate price of $15,300, payable $900 cash, $1,100 on demand, and the balance in equal annual installments of $1,500, save the last payment, which was to have been $1,300, such deferred payments having been represented by notes executed by the purchasers jointly and severally with Mrs. Leontine Fontelieu, who, to secure the payment of the $14,000 represented by them, intervened in the act and mortgaged three slaves and the following described land and improvements, viz.:

"(1) Les proprietes suivants, dans le centre de la corporation de la Nouvelle Iberie, consistant en trois maisons de maitre, construites en bois, une grande maison construite en brique et partie en bois, circonstances et dependences, en semble les sols et terrains sur lesquels reposent les susdites maisons."

In 'this transaction Cestia & Fontelieu Freres were represented by Alphe Cestia, but there is no power of attorney annexed or referred to, nor does the act contain any pact de non alienando. In September, 1866, a judgment was rendered by the district court of the parish of St. Martin, as follows: "Dist. Court No. 5,974, Parish of St. Martin.

"Baptiste Cavaillez v. Theodore Fontelieu et al.

"In this case, by reason of the written confession of the defendants, and besides, the law and the evidence being in favor of the plaintiff, it is ordered, adjudged, and decreed that plaintiff recover of defendants, in solido, the sum of $7,300, with 8 per cent. per annum interest thereon from the 1st of April, 1858, and the costs of this suit, the note due on the 1st of April, 1861, and marked 'C.,' in the statement of facts, to be credited with several amounts thereon paid, which credits, on the production of the receipts by which they are evidenced, shall be indorsed on this judgment. It is further ordered, adjudged, and decreed that the property hereafter described shall be seized (1) A lot of ground situated in the limits of the town of Abbeville, on Jefferson street, fronting on the Place de la Magdalene, having a front of 180 feet, being lots Nos. 34 and 35 of the plat of Abbeville, with the buildings and sold to satisfy these judgments, to wit: and improvements thereon erected. (2) Another lot situated in the town of New Iberia, measuring one arpent front on Main street by one arpent and a half in depth, bounded north by a lot belonging to the heirs of Dr. Smith, south by Petit Anse street, east by Main street, and west by lot of Mrs. Francois Vincent, with the buildings and improvements thereon erected; these lots and improvements being those mortgaged to secure the claims of plaintiff, as appears by document marked 'A' in the state-ment of facts. Done, read, and signed in open court this 29th day of September, 1866."

So far as we are informed, no immediate action was taken in the way of executing

the judgment thus obtained, and in December, 1868, the record in the case appears to have been transferred to the district court of the parish of Iberia, agreeably to the provisions of Act No. 208, p. 272, of 1868, whereby that court and parish were created, and thereafter said record disappeared, and nothing more is known as to the antecedents of the judgment, as to the circumstances under which it was rendered, or as to the parties bound, or intended to be bound, by it, than is to be gathered from its face and from the action subsequently taken concerning it, to which reference will hereafter be made. In April, 1871, Baptiste Cavaillez executed a notarial act, reading in part as follows, to wit:

"Personally * * * appeared Baptiste Cavaillez, * * * who declared that, for and in consideration of the sum of $1,260 to him paid by Mr. Paulin Fontelieu * * * on account of the judgment obtained by him (Cavaillez) in the case entitled 'Baptiste Cavaillez v. Theodore Fontelieu et al.,' in the 3rd Judicial District Court of the parish of St. Martin * * *, but in full of the amount due on the first day of March, 1871, as per act passed on the 6th day of September, 1866, by Edmund Monge, recorder and ex officio notary public in and for the parish of St. Martin, declared that he does, by these presents, sell, transfer, assign, and subrogate said Paulin Fontelieu to the rights privileges and mortgages by him (Baptiste Cavaillez) held, with the express understanding, however, that no claim will be made against him by the said Paulin Fontelieu on account of said transfer, and with the further understanding that the rights of the said Baptiste Cavaillez under the aforesaid judgment referred to shall not be affected by this transfer, and shall not be exercised until final settlement against the defendant in the above-entitled case, by preference to any rights acquired by said Paulin Fontelieu. * * * "

A similar act was executed on April 17, 1872, by Clark H. Remick, who appeared as the owner of the judgment which had been obtained by Cavaillez, said act reading, in part, as follows:

"The amount [$1,440] herein paid by said Paulin Fontelieu to said Remick is in full payment of an amount due on the 1st day of March, 1872, as per act passed before Edmond Monge, recorder and ex officio notary public in and for the parish of St. Martin and dated September 6, 1866."

Neither the act thus said to have been executed before Monge, recorder, nor the act (said to have been executed before Drouet, notary, August 23, 1871) by which Remick acquired the rights of Cavaillez, are produced, and we know nothing more about them than is to be gathered from the foregoing recitals.

In November, 1871, Wallace & Co. obtained judgment for $932.50 against Mrs. Leontine Fontelieu, and upon January 4, 1873, the property here in question, having been seized under a writ of execution which they had caused to be issued, was adjudicated to Paulin Fontelieu. The record in the suit thus mentioned has disappeared, but the plaintiff produces (1) a certified copy of the judgment from the office of the clerk of the court; (2) a certified copy of the sheriff's procès verbal and act of sale from the sheriff's salesbook or record; and (3) a certified excerpt from the clerk's charge docket showing entries of charges for all proceedings in the case, from the filing of the petition to, and inclusive of, the issuance and return of the fi. fa. The sheriff's procès verbal and deed contain the following recitals, to wit:

"Whereas, L. A. Hayes, sheriff, * * * by virtue of a writ of fi. fa., dated 23d November, 1872, to me directed by the above honorable court in the above-entitled matter, and directed against the property of the defendant, did seize the following described property, to wit: One town lot in the town of New Iberia, measuring 192 feet by 280 feet, bounded on the east by Main street, north, or above, by property belonging to A. L. Bergerie, south by Iberia street, and in the rear, or west, by property belonging to Theodore Fontelieu—with all the buildings and improvements thereon erected or attached, consisting of one large two-story store on the corner of Main and Iberia streets, three small stores on Main street, one large dwelling house on Iberia street, and two other small houses on Iberia street. * * * I adjudicated said property to Mr. Paulin Fontelieu for the sum of $6,000, which price of adjudication the said purchaser paid and settled in the following manner, to wit: He paid, cash, costs of suit and of sale of publication [sic] amounting to $50. The balance of the purchase money, to wit, $5,950 was retained by the purchaser, of which amount he is indebted in a certain sum, balance due on a mortgage of C. H. Remick,

which amount due said Remick purchaser assumed the payment and obligates himself to pay in accordance with the terms of said mortgage, is imputed to the payment of said mortgage claim of said purchaser, he, purchaser, having been subrogated to the right of said Remick on said mortgage, with the exception due as above mentioned, and being a mortgage creditor of said defendant. Now, know ye, that I, the said A. L. Hayes, * * * in consideration of the said sum, * * * do bargain, sell and deliver unto the said Paulin Fontelieu and to his heirs and assigns, forever, the property above described," etc.

It may be remarked in this connection that the original contract between Cavaillez and Cestia & Fontelieu Freres and Madame Leontine Fontelieu was recorded in the parish of Iberia on December 7, 1872, after the seizure and before the sale above referred to. Paulin Fontelieu died in the parish of Vermillion, where he had resided, in June, 1874. His succession was opened in that parish, and his brother, Laodice, one of the parties to the contract with Cavaillez, was appointed administrator. He was, at the time of his death, 28 years of age. His children, Annette (the present plaintiff) and Paulin, were, say, five years and six months old, respectively. When, if at any time, their mother qualified as their tutrix, does not appear.

On March 25, 1875, Mrs. Ernestine Fontelieu, wife of Theodore Fontelieu, obtained a judgment of separation of property against her husband, condemning him in the sum of $933.06, with interest, and decreeing that the legal mortgage in her favor, on the immovable property of her husband and the community, be held to date from September 1, 1857; and on March 30th following Theodore Fontelieu made a dation en paiement to his wife, in satisfaction of the judgment so obtained, which reads in part as follows:

"Personally came and appeared Theodore Fontelieu, * * * who declared that, his wife, Ernestine Gonsoulin, having obtained judgment against him, * * * desiring to pay said judgment, or part thereof, * * * it was his wish * * * to make to his wife a dation en paiement; * * * that he therefore * * * does hereby transfer unto his said wife * * * a certain lot situated within the corporate limits of the town of New Iberia, measuring 72 feet, more or less, on Iberia street, by one arpent in depth, bounded above by lot belonging to A. L. Bergerie, below by Iberia street, east by lot belonging to Joseph A. Breaux, Esq., west by lot belonging heretofore to Widow L. Fontelieu."

It is undisputed that the property referred to as "belonging heretofore to Mrs. Widow L. Fontelieu" is that which is here claimed by the plaintiff, and which, as we conclude from the record, would have been described as "belonging to Mrs. Widow L. Fontelieu," but for the fact that her title had been devested by the sale to Paulin Fontelieu under the execution issued in the suit of Wallace & Co. Following these transactions, we find that, upon August 7, 1875, the sheriff executed a deed from which we make the following excerpts, to wit:

"No. 5,974 District Court, Parish of St. Martin. Transferred to Parish of Iberia Dist. Court, No. 425.

"Baptiste Cavaillez, C. H. Remick Subrogee, v. Laodice Fontelieu et al.

"Whereas, A. L. Hayes, sheriff of the parish of Iberia, by virtue of a writ of seizure and sale dated June 29, 1875, to me directed by the above-named honorable court in the above-entitled matter, and issued against the property of the defendant, did seize the following described property, to wit: A lot of ground situated in the town of New Iberia, measuring one arpent front on Main street by one and a half arpents in depth, bounded north by a lot formerly belonging to heirs of Dr. Smith, at present August Bergerie, south by Petit Anse street, east by Main street, and west by lot formerly of Mrs. Francois Vincent, at present Theodore Fontelieu. * * * I adjudicated the said property to Mrs. Ernestine Gonsoulin for the sum of $2,342, which price of adjudication the purchaser paid and settled in the manner following, to wit: Costs of court, etc., and amounting to $37.95. The adjudication for aforesaid and amounting to $3,342 was handed over to C. A. Remick, subrogee of Baptiste Cavaillez, who being, as per certificate of recorder, the first mortgagee: Now, know ye that I, the said A. L. Hayes, * * * by virtue of the said writ and in consideration of the said sum of $2,342 as aforementioned, do bargain, sell, and deliver unto the said Ernestine Gonsoulin and her assigns and heirs, forever, the property above described and all the right, title, and interest which the said L. Fontelieu et al. had in the property on the day of the seizure thereof, or at any time since, or now has."

The record in the case referred to in this act, save the judgment, as has already been stated, has disappeared, and no writ or application for a writ has been produced in support of the sale thus made, nor have the defendants produced the charge docket of the clerk, upon which, as appears from the offer made on behalf of the plaintiff, all papers filed or issued were regularly charged. What the defendants have produced is an excerpt from what is called the "General Docket," upon which there appears to have been entered, under the title, "C. H. Rennecke v. L. Fontelieu et al.," and under the Nos. 422 and 423, a suit, No. 5,974, transferred from the parish of St. Martin. In a column headed "Petition, When Filed," appears the entry "No petition in the file." In a column headed "Execution, When Filed or Issued," appears the entry "June 29th, 1875." In a column headed "Process, When Served," appears the entry "Service accepted Dec. 27/75." And there are no other entries, save the name of an attorney. Mr. Segura, called as a witness for defendants, testified that he became clerk of the court in 1876, and that he found that the General Docket had not been posted, in many cases, since 1873; that he and his deputy posted it from the original papers; that the handwriting of the entries excerpted is that of his deputy; that he and his predecessors kept "charge dockets," in which charges were made for all papers filed or issued. Being asked, in substance, what was entered in the general docket, he replied:

"I understand, the date of filing petition, of filing answer, date of judgment, and also date of notice of judgment, and also date of issuing fi. fa. In fact, I posted in that index all the filings had in the case.

As it appears in the transcript, the typewritten figure "5," in the entry "Service accepted Dec. 27/75," seems to have the figure "7" written over it with a pen, and there are no other dates in the excerpt than those above given. Upon the same day that the sheriff made the sale as thus set forth, Mrs. Ernestine Fontelieu appeared before a notary, and, acknowledging that she owed C. H. Remick $2,140, executed three notes, payable to his order, for $714 each, and secured same by mortgage on the property purchased by her. Upon March 10, 1886, aided by her husband, she executed an act of sale to Mrs. Margueritta Del Bonduo, Widow Smerali, describing the property sold and otherwise reading, in part, as follows, to wit:

"(1) A certain lot situated within the corporate limits of the town of New Iberia, La., having a front on Main street in said town of 54 feet and 8 inches, including the sidewalk, by a depth on Iberia street, between parallel lines, of 85 feet. Said lot bounded on the front, or north, by Main street, and on the south, or rear, by lot hereinbelow described, west by property of vendor, and east by Iberia street.

"(2) Another certain town lot, situated within the corporate limits of the town of New Iberia, La., and adjoining the lot above described, having a front on Iberia street of 37 feet 5 inches by 107 feet and 5 inches in depth, between parallel lines, and extending, in the rear, to the property of vendor. * * * The said property above described being part of the property acquired by vendor at sheriff's sale August 7, 1875, and of record in Book 1, Sheriffs Sales, folio 126. * * * This sale is made for * * * $3,400, whereof the said purchaser has presently paid, in ready current money, unto said vendor, the sum of $2,400, * * * and for the balance * * * has furnished her two notes. * * * Now, to further secure the said purchaser against the claims of any and all persons whatsoever, and to the extent that any loss may accrue to said purchaser, or to any future owners of the land hereby sold to said purchaser, and on account of such claims, said Mrs. Ernestine Gonsoulin, aided as above, does hereby acknowledge herself indebted unto said Mrs. Margaritta Del Bonduo, or to any future owners of said property, in the sum of $2,000 or such part thereof as may be necessary to pay such loss as may hereafter accrue, payable when said loss shall be determined to be due her or to such owners, and to secure the payment of such sum of money she declares she does hereby specially mortgage * * * in favor of all such persons the following described property: [Here follows a description of the property which Madam Fontelieu had acquired, by dation en paiement, from her husband.]"

In 1888 the plaintiff presented a petition to the district court, praying to be emancipated, and alleging, among other things, that:

"She has rights of property exceeding $500 in value which require her personal attention

and administration, and particularly, her rights in certain property situated in the town of New Iberia, bounded northeast, by Main street, southeast by Iberia street, northwest by A. Bergerie, and west by lots formerly belonging to Mrs. Vincent, and which land, or lot of ground, is now held by Mrs. Ernestine Gonsoulin and has been in her possession for several years, for which her said tutrix is precluded from suing by certain documents signed by her several years ago."

And she was accordingly emancipated.

In 1894 Paulin Fontelieu (plaintiff's brother) presented a petition to the court, alleging that he desired to be emancipated, that his parents were both dead, and that he was without a tutor, and praying that Charles Fontelieu, his cousin, be appointed tutor ad hoc; and, the appointment having been made, he thereupon presented another petition, alleging as follows;

"That he has interests in certain claims which are worth to him at least $200, being his pretensions to certain lands in the town of New Iberia which are now in possession of third persons; that his interest makes it necessary that he be fully emancipated," etc.

To this petition, Charles Fontelieu, the tutor ad hoc, appended his affidavit to the effect that the petitioner was over 18 years of age, and that "his interests set forth in his petition for emancipation are real and make it advisable that he be emancipated," etc.; and he was accordingly emancipated. It may here be stated that the judge a quo excluded these petitions for emancipation, and also excluded testimony on behalf of plaintiffs to explain that poverty and other causes operated to delay the institution of this suit. It is admitted that Theodore Fontelieu and his sons, Albert and Charles, were lawyers practicing in Iberia.

### Opinion.

It is admitted that plaintiff's father, mother, and brother are dead, and that she is their sole heir. As bearing upon her averment that her father acquired the property here claimed at the sheriff's sale made pursuant to a writ of fieri facias issued under a

judgment rendered in the suit of Wallace & Co. against Mrs. Leontine Fontelieu, it is admitted that the original papers constituting the record in that case are lost or destroyed, and plaintiff has produced copies of the judgment and sheriff's deed from the books in which those copies are required to be made, and, in view of the fact that the events in question occurred more than 30 years ago and that the immediate actors are dead or have disappeared, she has offered, as showing the existence and purport of the writ of fieri facias: (1) The clerk's "charge docket," upon which all papers filed or issued are shown to have been entered, and upon which the issuance and return of a fi. fa. in the case of Wallace & Co. against Mrs. Fontelieu are charged as of dates corresponding with the recitals of the sheriff's deed; (2) parol evidence to the effect that it was and is customary to return writs of execution, when satisfied, to the file in the clerk's office; (3) the recitals in the procès verbal and deed of the sheriff, to the effect that in making the sale he acted under the authority of the fi. fa., which, from the docket kept by the clerk, appeared to have been issued. Under the circumstances as stated, and in view of the fact that we find nothing whatever to suggest that the proceedings were not, as they appear to be, regular, formal, and legal, we conclude that the plaintiff has established the title set up by her, and that the same should be sustained, unless it has been shown that she, or her authors, voluntarily or involuntarily parted with it after its acquisition.

It is the general rule that, to establish title derived from a sale under execution, one must show a judgment rendered by a court of competent jurisdiction, a writ issued in conformity, thereto, and a sale by the sheriff pursuant to the writ; but it is also well understood that, where the best evidence of a fact cannot be obtained, secondary evidence may be offered, and it has never been

held, in this state, that one who pays for and obtains a title to property, adjudicated to him at sheriff sale, ceases to be the owner because of the subsequent loss or destruction of the writ under which the sheriff acted, or of the record of the suit in which such writ issued. In Succession of Baum, 11 Rob. 322, it was said:

"The appellees have shown the adjudication made to them at the sheriff's sale by the production of the judgment, writ of fi. fa., and sheriff's return and deed. These were prima facie evidence that the formalities of the law had been complied with, and it was the duty of their adversaries to prove that they were not."

In Childress v. Allin et al., 17 La. 37, it appeared that "all the papers of the suit, together with the execution and sheriff's return, were lost or destroyed"; that "the judgment offered was copied from the minutes, or record book, of the court," and "was all the evidence of the suit that could be had"; and that the sheriff's deed recited that the sale had been made pursuant to a writ of fieri facias which had issued under the judgment. The court thereupon held:

"If the records of a court of justice be lost or destroyed, we are not ready to say that, after their existence and loss have been established, the party should not be allowed to resort to the next best evidence which the nature of the case is susceptible of, and that it should not be received, and, if written copies of them do not exist, their contents may, if necessary, be shown by parol testimony."

See, also, Robinett v. Compton, 2 La. Ann. 855; Davis v. Wilcoxen, 5 La. Ann. 584; Purl v. Miles, 9 La. Ann. 270; Coulson v. Wells, 21 La. Ann. 383; 17 Cyc. 503.

It is not suggested that plaintiff, or her authors, at any time parted voluntarily with the title so acquired, and the question is whether she or they has or had been devested of it by legal process or prescription. It will be remembered that by the contract of January 8, 1857, a mortgage was retained by Cavaillez upon the property in Abbeville, which he by that act sold to Cestia & Fontelieu Freres, and that by the same act another mortgage was granted (as security for the fulfillment of the obligations assumed by said purchasers) by Mrs. Leontine Fontelieu, upon property owned by her in New Iberia. According to its terms, the time within which the payments called for by the contract were to have been made expired in 1865, and apparently they had not all been made. On September 6, 1866, therefore, another contract seems to have been entered into, by act before Monge, notary, whereby the time was extended; for we find that, in April, 1871, and April, 1872, Paulin Fontelieu paid $1,360 and $1,440 to Cavaillez and Remick, respectively, as in full of payments falling due on March 1, 1871, and March 1, 1872, and that he was in a measure subrogated with respect to such payments to the rights of Cavaillez and Remick as against their debtors. It is not suggested that the act thus passed before Monge has been lost or destroyed, and, as it seems to be necessary to explain the judgment obtained by Cavaillez, upon which defendants rely, and to explain the subsequent situation, we are at a loss to understand why it has not been produced. As the case is presented (the balance of the record having been lost or destroyed), the judgment referred to seems to us to be unintelligible, and, as to Mrs. Leontine Fontelieu and her property, unenforceable, for this: that it was rendered about three weeks after the contract of September 6, 1866, which, as we infer, extended to a period subsequent to the date of the judgment the time for the payment of the debt for which the judgment was rendered; that it purports to have been rendered on the written confession of the "defendants," and may therefore be regarded as in the nature rather of a contract than of a judgment, but that no defendant is named except Theodore Fontelieu, and we have no means of knowing, and no right to assume, that Mrs. Leontine Fontelieu was connected with, or was bound by, it; and that it is by its terms subject to credits, which were to have been indorsed upon it, but the amounts

of which are not stated, and which have never been so indorsed.

Concerning the essentials to a valid enforceable judgment:

"The rule is correctly stated," says Mr. Freeman, "in Alexander v. Wheeler, 69 Ala. 332 as follows: 'The rule of law is that every judgment of a court of justice must either be perfect in itself or capable of being made perfect by reference to the pleadings or to the papers on file in the cause, or else the other pertinent entries on the court docket.' " Freeman on judgments, § 50; Ency. Pl. & Pr. vol. 11, p. 930, note.

In the case of Cavaillez v. Theodore Fontelieu et al., if it could be ascertained from an examination of the record that Mrs. Leontine Fontelieu was cited or that she joined in the confession, it might be held that she was concluded by the judgment, although her name is not mentioned therein; but the record is lost, and those facts are not otherwise proved, and it would be a bald assumption to hold that they exist. Moreover, as we have seen, the judgment condemns the "defendants," whomsoever they may be, for no fixed amount.

"But we may say, in general," says Mr. Black, "that if a judgment purports to be final and is given upon a money demand, the amount of the recovery must be stated in it with certainty and precision. If the amount remains to be determined by a future contingency, or ascertained by references, or diminished by the allowance of an unliquidated credit, or is otherwise indefinite and uncertain, it is no proper judgment." Black on Judgments, vol. 1, § 3.

See, also, same volume, sections 114, 118; 11 Ency. Pl. & Pr. pp. 935, 936; Decker's Ex'rs v. Bradford's Heirs, 4 Mart. (O. S.) 312; Dupuy v. Dashiell, 15 La. 124; Peet, Simms & Co. v. G. S. Whitmore, 14 La. Ann. 408.

The judgment, such as it is, rendered by the district court of the parish of St. Martin, and by operation of law (Act No. 208, p. 273, of 1868, § 8) and as a matter of fact transferred to and made in effect, a judgment of the district court of the (newly created) parish of Iberia, was to be dealt with by that court as though originally rendered by it. There was, therefore, no authority for the enforcement of its execution by means of a writ of seizure and sale. Moreover, the act upon which it was predicated did not contain the pact de non alienando, and the property affected by it, when seized, no longer belonged to the mortgagor, but to a third person, to wit, to the succession of Paulin Fontelieu, which was then under administration in the parish court of the parish of Vermillion, with Laodice Fontelieu (who, if any one besides Theodore Fontelieu could be so regarded, was a defendant in the seizure), acting as administrator, from which it follows that the district court was without jurisdiction to issue against it a writ either of seizure and sale or of execution. Const. 1868, art. 87; Hall & Lisle v. Belden, 29 La. Ann. 118; Morgan, Wife, v. Lalanne, 32 La. Ann. 1300; Hart v. Connolly, 49 La. Ann. 1587, 22 South. 809; Donaldson v. Maurin et als., 1 La. 39; Taylor v. Pipes, 24 La. Ann. 551; Reggio, Curator, v. Blanchin & Giraud, 26 La. Ann. 532; Leonard v. Sheriff et al., 37 La. Ann. 299; Bank v. Miller, 44 La. Ann. 199, 10 South. 779. Again, the original contract of January 8, 1857, was signed "Cestia & Fontelieu Freres," presumably by Cestia; but there is nothing to show that his authority to represent his firm or its members was in authentic form, or, indeed, that he had any authority, and executory process could not legally have issued to enforce the mortgage granted by him in their names. Dosson, Curator, v. Sanders, 12 Rob. 238; Crescent City Bank v. Blanque, 32 La. Ann. 264. And the suretyship of Mrs. Leontine Fontelieu could not have exceeded the debt due by the principals, or have been contracted under more onerous conditions. Civ. Code, art. 3037; Gerson v. Hamilton, 30 La. Ann. 740; Bloom v. Kern, Id. 1263; Stewart v. Levis Bros., 42 La. Ann. 39, 6 South. 898. The defendants, as secondary evidence of the issuance of the writ of seizure and sale, offered, as we have seen, an excerpt from what is

called the "general docket" of the district court of the parish of Iberia; a docket which, so far as we are informed, the clerk was under no legal obligation to keep and had no personal interest in keeping, and which, when kept at all, was kept in a careless and perfunctory fashion, so much so that, from 1873 to 1876, it seems hardly to have been kept at all. The clerk who succeeded to the office in 1876 so testifies, and he also testifies that he and his deputy, who had been employed by his predecessor, posted the docket from the original papers, and that the entries offered were in the handwriting of the deputy, but whether they were among the entries so posted he does not state. Upon the other hand, the clerk's "charge docket" is a record in which the clerk has a vital interest, and the correctness of the entries in which is more or less assured by the fact that the litigants against whom the charges are entered have an interest in the matter of their correctness in conflict with that of the clerk. We are therefore inclined to think that it would have furnished more satisfactory information upon the question at issue than the excerpts which the defendants thought proper to offer. Conceding, however, for the purposes of argument, that the general docket shows that, in the suits numbered 422 and 423, entitled "C. H. Rennecke, Sub., v. L. Fontelieu et al.," a writ was issued on June 29, 1875, it affirmatively appears, from the same evidence, that there was no petition in the file, or, in other words, that no application for the writ was placed of record, and it also shows that "defendants" accepted service, on Dec. 27, 1875, some four months after the writ had been executed by the sale of the property seized. Who the "defendants" were who accepted service does not appear (though it is fair to suppose that Laodice Fontelieu, the only defendant named, was one of them), nor, is the fact accounted for that, whereas the judgment

runs against "Theodore Fontelieu et al." in the title of the suit as it came from St. Martin, as it appears on the general docket, the defendants are "L. Fontelieu et als." It will, however, be remembered in this connection that Laodice Fontelieu, whilst one of the debtors, was also, at the time of the issuance of the writ, the administrator of the succession of Paulin Fontelieu; that Paulin Fontelieu had paid $2,800 of the debt due by "Cestia & Fontelieu Freres," and was, in a measure, subrogated to the rights of their creditors with respect thereto; that it was the property of his succession, and not that of Cestia & Fontelieu Freres, which was to be seized; and that the purchaser of that property was the wife of Theodore Fontelieu, who was also a debtor under the contract and judgment mentioned. As the matter stands, therefore, Paulin Fontelieu paid, with subrogation, $2,800 of the debt due by Cestia & Fontelieu Freres (a firm composed of Alphee Cestia Theodore Fontelieu, and Laodice Fontelieu), and subsequently bought at sheriff's sale the property which was mortgaged to secure that debt. Thereafter the creditors, for the balance of the debt, caused an unauthorized writ directing the seizure and sale of the property to be issued by a court having no jurisdiction to order such seizure and sale, and Laodice Fontelieu, who was at once the only named defendant in the writ as issued and the administrator of the succession of Paulin Fontelieu, having accepted service, the property belonging to the succession was seized, and was sold to the wife of Theodore Fontelieu, another of the members of the firm of Cestia & Fontelieu Freres with the result that the amount which had been paid by Paulin Fontelieu inured to the benefit of that firm, and the property of his succession was illegally sold in satisfaction of the balance of the debt due by that firm and its members.

It is said that, in purchasing the property,

Paulin Fontelieu assumed to pay, as part of the price, the balance of the debt due to Remick, subrogee, and that the debt so assumed, having become his, as well as that of Cestia & Fontelieu Freres, his heirs have no reason to complain that the sale was made for its satisfaction. The facts are, however, that of the $6,000 bid by him Paulin Fontelieu retained $5,950 concerning which the sheriff's deed contains the following recital, to wit:

"Of which amount he is indebted in a certain sum, balance due on a mortgage of C. H. Remick, which amount, due said Remick, purchaser assumed the payment and obligates himself to pay in accordance with the terms of the mortgage is imputed to the payment of said mortgage claim of said purchaser; the purchaser having been subrogated to the right of said Remick on said mortgage, with the exception due as above mentioned, and being a mortgage creditor of said defendant."

This is almost unintelligible, but, interpreted in the light of other facts which have been established, seems at least to mean that, apart from the indefinite credits referred to in the judgment obtained by Cavaillez in 1866, the original debt, arising out of the contract of 1857, was undetermined in amount, and was held partly by Remick and partly by Paulin Fontelieu himself. It is not, however, pretended that Remick proceeded upon any assumpsit of Paulin Fontelieu. On the contrary, the defendants allege that the writ of seizure and sale was issued in execution of the judgment mentioned, and the facts above stated are merely cumulative, in showing how impossible it was that that judgment could, under any circumstances, have served as the basis of the writ, and how unjust it was to the widow and heirs of Paulin Fontelieu that Laodice Fontelieu, his debtor and the administrator of his succession, and Theodore Fontelieu, also his debtor, should have allowed it to be executed to their own great advantage.

It is said that plaintiff is estopped by reason of the fact that Paulin Fontelieu recognized the judgment under which the property was sold by acquiring an interest in it; but we find nothing in the contracts by which that interest was acquired which is inconsistent with the right here asserted to deny that the judgment was susceptible of enforcement in the manner and under the circumstances heretofore stated. It is finally urged on behalf of the defendants that Mrs. Ernestine Fontelieu purchased in good faith and held possession for many years, under a title translative of property, and hence that this action is barred by the prescription of 10 years.

Unlike tax titles, however, and titles evidenced by notarial acts executed by the parties holding the same, the title obtained through a sheriff's sale requires something more than the sheriff's deed to make it the just title contemplated by the law as the basis of the prescription relied on. The effect of the tax title is regulated by specific provisions of the Constitution and statutes. The title by notarial act results, ordinarily, from a contract in notarial form by the owner of the property, or by his agent, whose mandate, in authentic form, is annexed to the contract. The sheriff does not pretend to sell his own property, nor does he pretend to sell the property of others by his own authority. He sells as a mandatary, whose mandate is a writ issued by the clerk, and the clerk can issue the writ only pursuant to and in execution of a judgment of the court, and the court must confine itself to its jurisdiction in rendering the judgment; so that the title translative of property resulting from a judicial sale consists of a judgment of a competent court, a writ issued pursuant thereto, and the procès verbal, or deed, of the sheriff, showing the execution of the writ in conformity to the mandate therein contained. The following excerpts from a few of the many decisions upon the subject are sufficient to show that the question has long since been settled:

"The settled jurisprudence of this court is that, to constitute a title translative of property, the judicial sale must be accompanied by the judgment and execution." Dede v. Boguille, 8 La. Ann. 139.

"It is incumbent on a party claiming under a sale by virtue of a fi. fa. to produce the writ of execution, the sheriff's return, and the judgment. * * * The judgment shows the nature of the decree of the court, the writ is the authority given for making the judgment effective, and the sheriff's return shows what was done under the execution." Hyman v. Bailey et al., 13 La. Ann. 450.

"It has been often held that, when a party relies on a title acquired by a sheriff's sale, he must show, not only the sheriff's deed, but the writ and judgment on which the sale is based." Clarkston v. Vincent & Co., 32 La. Ann. 613.

"The execution, being unauthorized by the judgment, could confer no title on the creditor by whom the irregularity was committed." De Gruy's Syndic v. Hennen, 2 La. 547.

"The sale of Mrs. Belard's interest in the property under the execution of a judgment rendered without citation is an absolute nullity. The defendant pleads prescription of five and ten years as giving title. The adjudication was null and void, and does not support prescription." Belard & Johnson v. Gebelin & Duggan, 47 La. Ann. 162, 16 South. 739.

Applying the law to the facts disclosed by the record, it is evident that the defendants have not possessed the property claimed under a just title, and hence that their pleas of prescription are not well founded. Nor can they and their authors be regarded as possessors in good faith. It is admitted in the brief of their counsel that Mrs. Ernestine Fontelieu knew, at the time of her purchase of the property, that the title was vested in the succession of Paulin Fontelieu. The learned counsel say, however, that she also knew that Paulin Fontelieu had not paid for it, but that he had retained $5,950 of the price to meet the Cavaillez & Remick mortgage debt. In this we think that the counsel are somewhat in error, since it appears to us that a portion only of that amount was retained for the purpose mentioned, whilst the balance was retained to be attributed to that portion of the mortgage debt which was held by the purchaser himself, and we are not informed as to the amount of that portion. But, if it had been

otherwise, if the succession of Paulin Fontelieu had owed a larger proportion of the price than in fact it did owe, that circumstance would not have cured the radical and patent nullities in the title under which the defendants' author took possession of its property. That title, to have authorized the belief that the holder was the owner of the property, should have consisted, as we have seen, not only of the sheriff's deed, but of a valid judgment, and a valid writ authorized by the judgment, under which the sheriff could legally have made the sale and have executed the deed. But of these three necessary elements two were lacking. There was no judgment, so far as we are informed by the record, against any one who owned, or had ever owned, the property in question, and that fact the purchaser was bound to know, as she was, also, bound to know that, even under the original mortgage, in which there was no pact de non alienando, the plaintiff could not legally have proceeded, via executiva, against property the title to which was vested in a third person, not a party to the mortgage, and that third person a succession under administration in a court other than that by which the writ was issued.

There has been great delay in the bringing of this suit, and the plaintiff endeavored to show the reason for it; but the testimony upon the subject was in the main excluded upon the objection of defendants' counsel. Even as it is, however, we are informed by the record that for many years the plaintiff and her brother were minors, that they were emancipated for the express purpose of enabling them to look after their interests in the property here claimed, and that, in the emancipation of Paulin Fontelieu, Jr., Charles Fontelieu, as tutor ad hoc, made affidavit to the effect that the interest referred to in the petition was "real." This, together with the fact that Mrs. Ernestine Fontelieu, in making the sale to Mrs. Del Bonduo, was required to give bond to protect her vendee

against the claim now asserted, is sufficient to show that the plaintiff and her authors were understood to be in the position of at least standing upon their rights, and it may be that, if they had been permitted, they would have shown that poverty, or other good reason, has delayed the assertion of those rights. At all events, defendants, having excluded the explanation, are not in a position to object to the demand as stale. As possessors without a just title, the defendants owe the fruits and revenues of the property from the commencement of their possession (Donaldson et al. v. Hull, 7 Mart. [N. S.] 112; Lowry, Curator, v. Erwin, 6 Rob. 210, 39 Am. Dec. 556, et seq.; Walworth v. Stevenson, 24 La. Ann. 251; Heirs of Dohan v. Murdock, 41 La. Ann. 494, 6 South, 131; Beaulieu v. Monin, 50 La. Ann. 732, 23 South. 937; McDade v. Levee Board, 109 La. Ann. 636, 33 South. 628); and it is admitted that they and their authors (from whom they inherit) have collected $240 a year as rent from the property since August 1, 1875. We find no counterclaim set up by defendants, and it is presumed that the amount admitted to have been collected represents the net revenue.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be annulled, avoided, and reversed, and that there now be judgment in favor of the plaintiff, Mrs. Annette Fontelieu, wife of W. M. Roberts, and against the defendants Albert Fontelieu and Mrs. Azema Durand, tutrix of the minor, Theodore Fontelieu, decreeing said plaintiff to be the owner of the property described in the petition, to wit, "a certain tract of land in the town of New Iberia, parish of Iberia, La., situated on Main and Iberia streets of said town, said property being bounded above by the property of Augustin Bergerie or assigns, below in part by property of Charles Gougenhiem and in part by said Iberia street, in front or on the east by said Main street and property of Charles Gougenhiem, and on the west by property of Albert Fontelieu," and that she be put in possession thereof. It is further ordered and adjudged that said plaintiff recover of said defendants the sum of $240 per annum as rent for the years beginning upon August 7, 1875, and continuing until the surrender of the property, together with interest at the rate of 5 per cent. per annum upon each annual installment of rent from the date of its maturity; the interest upon the first year's rent to run from August 7, 1876, and so on with the others. It is further adjudged and decreed that defendants pay all costs.

### On Rehearing.

On the application for rehearing the attention of the court is called to the fact that the minor defendant, having necessarily accepted the succession of his deceased father with benefit of inventory, ought not to be condemned beyond the property inherited.

It is therefore ordered, adjudged, and decreed that the judgment heretofore handed down be amended in so far as to restrict the execution thereof, as against the minor defendant, Theodore Fontelieu, Jr., to the property inherited by him from his deceased father, Charles Fontelieu.

Rehearing refused.