Statement of the Case.
MONROE, J.
Plaintiff, as holder of a note for $1,000, purporting to have been made by Charles A. Spitzfaden and secured by an act of mortgage executed by him, brought suit against said Spitzfaden, which resulted in an adverse judgment, decreeing, in effect, that said note and act were forged. It then brought suit against Theodore G. Spitzfaden, the notary before whom the instruments purported to have been executed, and against defendant, as the surety upon his official bond.
Defendant answered, denying, generally, the allegations of the petition, admitting its signature to the bond sued on, and, further, as follows:
“That claims, some of which have gone to judgment, largely exceeding its maximum liability, under the bond of $10,000, have been propounded against respondent, and respondent reserves all of its rights, upon the trial of this case, to show the amounts which it has paid in liquidation of those judgments and in satisfaction of its maximum liability of $10,-000 upon Theodore G. Spitzfaden’s bond. Further answering, respondent pleads that, in the event the balance unpaid on said bond is insufficient to satisfy plaintiff’s claim, plaintiff’s judgment be restricted to the balance due by respondent upon its bond.”
The evidence adduced on behalf of the defendant, surety, consisted of the testimony of its counsel, to the effect that defendant had been condemned, by judgments rendered in certain suits, brought on the bond in question, of which judgments some had been paid in full, some had been paid with a reservation concerning the question of interest and attorney’s fees, one was about to be paid, one was about to be taken up by appeal, and one was about to be made the subject of an application for the writ of review. The names of the respective plaintiffs in the suits mentioned, the amounts for which the judgments were rendered, and the status of the judgments, as shown by the testimony, may be briefly stated as follows:
Felmeden — $1,289.50 (or, perhaps, $1,281.-50), paid, on final judgment, January 24, 1910. What attorney’s fees and interest, if any, or costs, were included in the amount paid, does not appear. The testimony of the counsel concerning the payment is as follows:
“I paid Scott Beer and E. M. Robbert $1,-289.5Ó. There is a further amount due under that judgment, for interest and attorney’s fees, and, by agreement between counsel, the question of the correct interest on these claims, being in the nature of damages, is to be determined by the final result in the suit of Flanagan v. Spitzfaden. I am not able, at this time, to give the exact amount of the claim, but I have paid $1,281.50, and, if the interest is different from what I think it ought to be, the claim will aggregate $1,300.”
Feldner — $952.30, paid, on final judgment, November 22, 1909.
*557 “There is an item of $46.50 still due under that judgment, to be determined by the final result in Flanagan v. Spitzfaden.”
Barron — $771.10, paid, on final judgment, November 22, 1909. There is an item of conventional interest, $96.20; and attorney’s fees, $75, which is to be determined by the final result in the case of Flanagan v. Spitzfaden, to be added to that amount.
Russo — $330.20, paid, on final judgment, December 1, 1909; and a further sum of $98.40, dependent on decision in Flanagan case.
Russo — $127.88, paid, on final judgment, December 20, 1909, and claim for further amount (not stated) for attorney’s fees and interest, dependent on decision in Flanagan case.
Barron — $1,546.93, paid, on final judgment, February 26, 1910; and question, whether defendant was liable for conventional or legal interest, left dependent on decision in Flanagan case.
Hesse — Final judgment for $2,350, with legal interest from judicial demand, “April, 1909,” and costs aggregating $92, to be paid within a “few days.”
Deering — Judgment for $650, “interest and costs,” just rendered, and from which an appeal was to be taken.
Flanagan — Judgment for $915, “with legal interest from judicial demand and costs,” affirmed by Court of Appeal, and to be made the subject of an application for writ of review. Costs, exclusive of such application, said to amount, approximately, to $61.50.
The aggregate amount, so far as the actual figures are .disclosed, for which defendant had thus been condemned, was $9,408.73, or $9,416.73 (as the amount paid to Felmeden may have been $1,289.50 or $1,281.50). The additional amount, so far as disclosed by the figures given, for which claims were pending, was, say, $334, making a liability on the bond of, say, $9,750.73; to which may be added the unstated amounts said to have been awaiting judicial action in the |'lanagan case, in one of the Barron cases, one of the Russo cases, and, possibly, in the Deering case. Upon the case thus presented, there was judgment in the district court in favor of plaintiff and against the two defendants, in solido, for .the amount of the note sued on, with interest at 8 per cent, per annum from its date until paid, 10' per cent, upon said amount, principal and interest, as attorney’s fees, in accordance with the stipulation in the act of mortgage, $18,-35 for costs expended by plaintiff in the suit against Charles A. Spitzfaden, and all costs of the suit thus decided. The judgment, however, concludes as follows:
“This judgment against the Fidelity & Deposit Company of Maryland to be executory only to the extent of such balance as may remain unpaid under its bond of $10,000.”
Neither of the defendants appealed, and, upon the appeal of the plaintiff, the judgment was affirmed by the Court of Appeal.
Opinion.
[1] 1. We are referred to no statute which requires a party, so situated as defendant appears to have been, to call together, in concursus, those asserting claims, or having claims to assert, against him as a common debtor; nor are we able to say, from the record before us, whether such a course was practicable, in this instance. Counsel for the applicant says, in his brief, that the suit against Charles A. Spitzfaden, to test the genuineness of the signature to the note held by applicant, was among the first brought, as the result of the wrongdoing of Spitzfaden, the notary, and that the present suit was brought against the notary and his surety “before many, if not all, of the judgments (in similar cases) were rendered.” We do not question the statement of counsel; but we do not find the information, thereby imparted, in the record, which fails to inform us of the dates upon which the different *559 suits referred to were instituted. Moreover, if the applicant was, originally, of the opinion that the note held by him was genuine, and, in that belief, brought suit against the maker, he could hardly have expected the holders of other notes, which they believed to have been forged by the notary, to await the result of the suit so brought, before bringing suits against the notary and his surety on their own claim; nor could he have expected that the surety of the notary would take the position that his (the applicant’s) note was forged (when the applicant was asserting the contrary) and call him in eoncursus, with the holders of the notes which might have been conceded to have been forged. Again, if the applicant had the right, which he no doubt had, to stand upon the position that his note was genuine, the surety of the notary had the same right with regard to the notes held by others. Counsel calls attention, in his brief, to section 10 of rule 8 of the civil district court, reading as follows:
“Whenever, by reason of the institution or pendency of two or more suits, by creditors claiming against a common debtor, conflicts may arise as between such creditors, whether as to the validity of their claims, or to the legality of the seizure levied, or as to the order in which they shall be paid, and there is a common fund which is the subject of such controversy, all such suits shall be assigned to the division first acquiring jurisdiction quoad such fund.”
By the terms of the rule, the condition contemplated by it is:
“Whenever, by reason of * * * suits * * * against a common debtor, conflicts may arise, * * * and there is a common, fund, which is the subject of such controversy, all such suits shall be assigned to the division first acquiring jurisdiction quoad such fund.”
[2] The mere fact, however, that two or more persons bring suits, in the civil district court, or in different cotirts, against the surety of their common debtor, does not create a common fund, of which either of the divisions of the Civil district court acquires any controlling jurisdiction, and still less is that the case where the surety denies any liability whatever. Hence the rule has no necessary application to the case here presented.
On the other hand, whilst defendant was not obliged to call together, in concursus, the different parties asserting claims on the bond, it seems quite likely that such a course, if practicable, would have tended to more satisfactory results for all the parties concerned.
[3] 2. In the brief filed on behalf of defendant in this court, we find the following admission:
“We, as counsel for the defendant surety company, know full well that we cannot include the costs of defending these suits in estimating our total liability, nor can we include the amount of interest which the judgment bears as part of our total liability.”
We shall not, at this time, place any interpretation upon the admission so made, and we refer to it merely to show that, even according to defendant’s own view of its position, it is not entitled to charge, as against its liability on the bond and in reduction of the amount for which it may be liable to plaintiff, the whole of the amounts shown to have been paid by it, for which it may have been condemned, or for which claims are pending in court. And, whilst the question may have presented difficulties, it appears to us that it was possible for our learned brother of the district court to have determined, within reasonably safe limits, for what proportion of the amounts thus referred to defendant was entitled to.be credited upon the bond, and for what amount it might be condemned in favor of plaintiff, with, perhaps, some reservations concerning the then pending litigation. Neither the plaintiff nor our learned brother were bound by the judgments, rendered in the other divisions of the court in other cases, with regard to the question of what should and what should not be regarded as a proper payment in reduc *561 tion of defendant’s liability on the bond. Under defendant’s answer, the moment that it was ascertained that plaintiff’s claim was otherwise enforceable against the bond, the burden rested on defendant to prove that which it alleged, to wit, that it had been condemned, or was in a way to be condemned, to the extent of its maximum liability on the bond, and hence could not be further condemned, on that contract. The judgment, of which the applicant herein complains, fails to decide any of the questions to which we have thus referred, and is so far lacking in the essential element of definiteness as not to be a proper judgment. Thus, after condemning defendant for a specific sum, it reads, as we have already stated:
“This judgment against the Fidelity & Deposit Company of Maryland, to be executory only to the extent of such balance as may remain unpaid under its bon'd of $10,000.”
It will be observed that there is no suggestion as to what the balance, thus referred to, may be, or how it is to be ascertained; from which it follows that another suit would be necessary in order to attain the very end for which the suit in which the judgment was rendered was brought.
In a well-known work on Judgments, the author has this to say under the subtitle “Essentials of a Judgment”:
“Again, a judgment must be definitive. It must purport to be the actual and absolute sentence of the law, as distinguished from the finding that one of the parties is entitled to a judgment. * * * Where an interlocutory judgment is rendered by default, upon a claim for unliquidated damages, its amount may be left for ascertainment by proper proceedings. But, we may say, in general, that if a judgment purports to be final, and is given upon a money demand., the amount of the recovery must be stated in it with certainty and precision. If the amount remains to be determined by a future contingency, or ascertained by referees, or diminished by the allowance of an unliquidated credit, or is otherwise indefinite and uncertain, it is no proper judgment.” Black on Judgments, pars. 114, 118.
See, also, Freeman on Judgments, p. 50; Enc. Pl. & Pr. vol. 11, pp. 930 (note), 935, 936; C. P. 539; Decker’s Ex’rs v. Bradford’s Heirs, 4 Mart. (O. S.) 312; Mudd v. Rogers, 10 La. Ann. 649; Peet, Simms & Co. v. Whitmore, 14 La. Ann. 408; Fontelieu v. Fontelieu, 116 La. 881, 41 South. 120.
Without, therefore, disturbing the judgment complained of, so far as it goes, it is ordered, adjudged, and decreed that said judgment be held to lack the essential quality of definiteness, in failing to determine the amount of the balance, if any, remaining unpaid of the $10,000, called for by the bond sued on and upon which the defendant Fidelity & Deposit Company of Maryland is surety, and in thereby failing to determine the amount, if any, to which the plaintiff may be entitled; and it is further adjudged and decreed that, to the end that.it may be ascertained and determined what proportion of the $10,000, called for by said bond, said surety, at the date of the rendition of the judgment in question, had paid or had become judicially liable for, on account of claims for which it may be entitled to credit in reduction of said amount, and that plaintiff may be awarded the balance, if any, thus found to be due, in so far as the same may be required to satisfy his claim, this case is remanded to the district court to be there proceeded with according to law and to the ruling here made — the defendant company to pay the costs of the appeal and of this proceeding.