**FEDERAL LAND BANK OF NEW ORLEANS v. CARPENTER, Sheriff, et al.**

**DALGARN v. SAME.**

Nos. 5127, 5128.

Court of Appeal of Louisiana. Second Circuit.

Dec. 13, 1935.

Rehearing Denied Dec. 31, 1935.

Edward L. Gladney, Jr., of Bastrop, for appellants.

Hawthorne & Files, of Bastrop, for appellees.

TALIAFERRO, Judge.

These two suits were consolidated for trial in the district court and here. The facts, issues, and legal principles applicable thereto are nearly identical.

In the year 1923, W. B. Sively, Jr., by two different acts, mortgaged to the Federal Land Bank of New Orleans, La., several tracts of improved farm land in Morehouse parish. The first mortgage executed covered 160 acres and the second one covered tracts aggregating 391.27 acres. Each mortgage contained the pact de non alienando. In the year 1928, the mortgagor conveyed the lands affected by both mortgages to his father, W. B. Sively, Sr., and he, in turn, in 1931 made a dation en paiement of them to his wife. J. R. Harkness, a defendant, was engaged thereafter to manage and oversee the farming operations conducted on the lands. On October 24, 1933, the senior Sively, as lessor, presumably acting for his wife, and Harkness entered into a written contract whereby Harkness was again employed (for the year 1934) as manager and overseer, and for his services it was stipulated he would receive one-half of one-third of the corn raised on the lands and one-half of one-fourth of the cotton produced thereon in said year. This contract recited that said lands had

been leased by Sively to tenants thereon on the "share cropper" basis. The tenants agreed to give to the landlord one-fourth of the cotton and one-third of the corn produced by them. Therefore, Harkness, as overseer, and Mrs. Sively, as lessor, were to share equally the rentals accruing from the property. All of the aforesaid instruments were timely recorded.

In August, 1934, the Federal Land Bank filed foreclosure proceedings on both mortgages. W. B. Sively, Jr., mortgagor, was made defendant. At sheriff sales following, the bank bought in the tracts containing 391.27 acres, and plaintiff G. W. Dalgarn became the adjudicatee of the 160-acre tract. Deeds were duly executed to them.

At the time the seizures were levied, there were on each tract of land growing and ungathered crops of cotton and corn. These were gathered and marketed by the tenants under the supervision of Harkness. Nearly half of the cotton had been picked and ginned before the seizure. No claim for any part of this gathered cotton is now made by plaintiffs.

These suits were instituted by the adjudicatees against J. F. Carpenter, in his capacity as sheriff, and Harkness, to compel them to render a "full accounting for all the crops situated upon the property on date of seizure," and judgment against them is prayed for for the value of said crops, which, the testimony discloses, were gathered and disposed of by Harkness before the sheriff's sales. Plaintiffs' theory and position, reflected from their briefs and the allegations of their petitions, is that all ungathered crops, growing and hanging by their roots on said lands when seized, were then an integral part of the realty, were seized as an incident to the seizure of the land, and title thereto passed to them as adjudicatees, subject to the rights of tenants and lienholders.

Defendants interposed exceptions of no cause and no right of action in each suit. These were overruled. They are urged here. The answer of each defendant in each suit is the same. Harkness avers that at the time he was appointed keeper of the seized lands, he was acting as manager and overseer thereof for the owner, a third possessor, under title duly registered in the conveyance records of Morehouse parish; that his relation to his principal was one of trust, as concerned the crops on said lands and proceeds of sale thereof; and that his keepership only embraced the realty seized, not the growing and ungathered crops, which were not the property of the mortgagor. He admits that he has gathered and converted into cash all of said crops, and is obligated to account therefor to his principal, and not to plaintiffs. He denies that there was any intention on the part of the sheriff to seize and, in fact, no seizure whatever was made of said crops or any part thereof. In all other respects the right of plaintiffs to recover is expressly denied.

The sheriff's answers are of the same tenor as those filed by Harkness, with such variance in verbiage as is appropriate because of differences in their positions. During the trial, Harkness submitted certain records, accounts, statements, etc., relative to the gathering and sale of said crops, which were accepted by the court, and judgments based thereon.

The court held with plaintiffs and rendered judgments in their favor for the net proceeds of sale of the interest of Mrs. W. B. Sively, lessor, in that part of the ungathered and growing crops on the lands when seizure was levied, eliminating therefrom that portion due Harkness as overseer. Defendants appealed.

Exceptions of No Cause and No Right of Action.

We experience no difficulty in reaching the conclusion that the exception filed in the Dalgarn case is well founded. While the petition alleges that when the land was seized there were growing and ungathered crops thereon, the ownership thereof is not alleged. Even for the petition of a seizing creditor to disclose a cause of action, in the circumstances of this case, he should allege that the growing and ungathered crops, or some part thereof, were owned by his mortgage debtor.

Article 465 of the Civil Code is as follows:

"*Crops, fruits and trees.*—Standing crops and the fruits of trees not gathered, and trees before they are cut down, are likewise immovable, and are consid-

ered as part of the land to which they are attached.

"As soon as the crop is cut, and the fruits gathered, or the trees cut down, although not yet carried off, they are movables.

"If a part only of the crop be cut down, that part only is movable."

And article 466 reads:

*"Fruits of immovables—Seizure.*—The fruits of an immovable, gathered or produced while it is under seizure, are considered as making part thereof, and inure to the benefit of the person making the seizure."

It will be noted that this last article plainly states that the fruits of an immovable gathered or produced while under seizure inure to the seizing creditor; not to the adjudicatee of the property. No good reason could be given why an adjudicatee (other than the seizing creditor) should have the right to demand and receive fruits and rentals of property, while under seizure, in which he has no interest and against which he has not a lien or mortgage. When he submits a bid at sheriff's sale, he does so for the property as advertised and offered for sale, to highest bidder, and when his bid is accepted and he complies therewith, the deed to him conveys all he bought and all he is entitled to. Granting, arguendo, that it was the sheriff's duty to have seized the growing crops, and he failed to do so, Dalgarn has no standing as adjudicatee to compel an accounting from the sheriff.

In Porche v. Bodin, 28 La.Ann. 761, the court discussed and passed on questions similar in principle to those involved in the present case, and held adversely to Dalgarn's contentions here. In that case the adjudicatee sought to enrich himself at the expense of a quarter-cropper tenant, whose lease contract with the mortgage debtor was duly recorded, by asserting that his deed to the land carried also the growing crops thereon in their entirety, regardless of ownership. He relied on articles 465 and 466 of the Civil Code to sustain his position. In passing, the court said:

"The evident meaning of these articles is, where the crops belong to the owner [mortgagor] of the plantation, they form part of the immovable, and where it

is seized, the fruits gathered or produced inure to the benefit of the seizing creditor. A crop raised on leased premises in no sense forms part of the immovable. It belongs to the lessee, and may be sold by him, whether it be gathered or not." See, also, Sandel v. Douglass, Sheriff, et al., 27 La. Ann. 628.

Therefore, for Dalgarn to have stated a cause of action in his petition, it would not only have been necessary for him to allege facts which disclose that he stands in the seizing creditor's shoes with respect to the fruits and rents collected by the sheriff while the land was under seizure, but also to have affirmatively alleged that the growing and ungathered crops thereon when the seizure was effected were owned in whole or part by the mortgage debtor. The petition being deficient in both of these respects is vulnerable to the exception of no cause of action.

The petition in the bank's case also fails to allege the ownership of the crops on the lands described in its deed, and for this reason we would be justified in sustaining the exception, but as the case on its merits is with defendants, we prefer to pass on the merits. The petition does not disclose that the original mortgage debtor sold the land to his father, nor that the father conveyed same to his wife, nor does it disclose the contract of employment under which Harkness managed the places and supervised the raising of crops thereon. These documents were introduced in evidence on trial of the case on its merits.

The petition in the foreclosure suit makes no reference to the crops on the land involved therein. The writ issued thereunder likewise omits reference thereto. Harkness was not advised that the crops were seized, therefore did not gather them in his capacity as keeper. He assumed that as the crops were produced by tenants, assisted by himself as the record owner's overseer, in which the defendant in the suits (original mortgagor) had no interest, valid seizure thereof could not be made. It is clear from the established facts of the case, record, and otherwise that if there was any seizure of these crops at all, it followed as a consequence

of the seizure of the land; and this is plaintiffs' contention.

We do not think the sheriff should have seized the ungathered crops. As these crops were owned by third persons (and not by the mortgage debtor against whom, alone, the executory process was leveled), no seizure thereof followed as a consequence of the seizure of the land. No demand was made upon the sheriff to seize any part of said crops, and knowing that the mortgage debtor had no interest therein, he correctly abstained from making seizure thereof and exposing himself to possible damages for his unauthorized acts.

It is true that a lease of realty affected by a mortgage containing the pact de non is dissolved by sale thereof under the mortgage, and that the adjudicatee is entitled to immediate possession on delivery of deed to him (Deville v. Couvillion, 5 La.App. 519), but the case at bar is free from complications because of these legal principles. However, we do not think it is the law that an adjudicatee of land sold under mortgage or lien, on which there is a growing crop, can enrich himself at the expense of the producer or person advancing money or supplies to enable the producer to plant, cultivate, and gather the crop, by appropriating said crop to his exclusive benefit. Equity demands that he not be allowed to do so. The decisions above referred to sustain this principle.

Here the crops were gathered and sold by the tenants and overseer before there was a sale under the foreclosure. In this respect the Sandel Case, supra, is very much on all fours with the present one. Therein it was said:

"If the plantation had been sold by the sheriff pending the lease under the mortgage previously executed containing the nonalienation clause, the sale would have dissolved the lease and the purchaser could have taken possession. But here, pending the seizure, the lessee is not disturbed in cultivating his crop, and after the cotton is ginned and baled ready for market—a movable belonging to the lessee—it is seized by the defendants, taken from the possession of the owner, and shipped and disposed of by the defendants, Silbernagle & Co. We think the cotton belonged to plaintiff, and the seizure and disposition of it by the defendants was unjustifiable and wrong. Richardson v. Dinkgrave, Sheriff, et al., 26 La.Ann. 632."

As stated heretofore, plaintiff concedes the right of the tenants to claim and hold the portion of the crops due them under contracts with Mrs. Sively, and also concedes that Harkness is entitled to take from said crops the part due him as overseer, but is contending for the part of the crops, or its proceeds, due to Mrs. Sively, the third possessor of the land. We do not think plaintiff's position well founded. We see no good reason why she, as owner and third possessor of the realty, is not in as good position to claim and hold her interest in these crops as the tenants and overseer could do. We have found no case so holding, but believe her rights in this respect are supported by the same legal principles and reasoning that protect the tenants and overseer.

For the reasons assigned, the exception of no cause and no right of action filed in the Dalgarn suit is sustained, and it is now ordered, adjudged, and decreed that the judgment therein appealed from be and it is hereby reversed, annulled, and set aside, and plaintiff's suit dismissed at his cost.

It is further ordered, adjudged, and decreed that the judgment appealed from in the suit of the Federal Land Bank be, and same is, hereby reversed, annulled, and set aside and its suit dismissed at its cost.

## On Application for Rehearing.

### PER CURIAM.

In our original opinion we stated as a fact that the lands involved in this suit were transferred by dation en paiement by W. B. Sively, Sr., unto his wife. Error on our part in this regard is assigned, among others, as a reason why a rehearing should be granted. We did err in this finding, as only the lands involved in the Dalgarn suit (No. 5128) were included in the dation to Mrs. Sively. However, we are of the opinion that it is immaterial to a correct decision on the merits of this case whether Mr. Sively or his wife was the record owner of the lands and of the crops thereon. The mortgage debtor, W. B. Sively, Jr., had no interest whatever in the crops; and we held, as a legal proposition, that article 466

of the Civil Code only applied when the growing crops on the seized lands belonged to the mortgage debtor.

Rehearing denied.