**VOSBURG v. FEDERAL LAND BANK OF NEW ORLEANS et al.***

No. 5369.

Court of Appeal of Louisiana. Second Circuit.

March 1, 1937.

*Rehearing denied April 1, 1937.

Marion J. Epley, Jr., and Harold Moses, both of New Orleans, and Hawthorne & Files, of Bastrop, for appellant.

Edward L. Gladney, Jr., of Bastrop, for appellee.

TALIAFERRO, Judge.

Plaintiff purchased from the widow and heirs of Willie Higginbotham, deceased, on March 1, 1929, a tract of land containing 227.9 acres, situated in Morehouse parish, which, together with 561.10 acres additional, Higginbotham had mortgaged to the Federal Land Bank of New Orleans to secure a loan originally for $24,000. In the act of sale, and as part of its consideration, plaintiff assumed and obligated himself to pay .365 per cent. of the balance due on said mortgage indebtedness, or the sum of $8,535.13. He leased the land to W. L. McGough for one-fourth of the crops produced therefrom for the years 1930 to 1934, inclusive. McGough operated the property through tenants and, as the cotton was ginned, he left at the gin each fourth bale for the account of plaintiff, and sold and accounted to him for a like quantity of the cotton seed.

On July 18, 1934, the Federal Land Bank instituted foreclosure proceedings on the Higginbotham note and mortgage which were conducted contradictorily with the surviving widow in community. A writ of seizure and sale issued August 18th, and on that date the sheriff levied seizure against the land and the growing and ungathered crop of cotton thereon. He was instructed specifically by the bank's counsel to seize the ungathered crop. A keeper was appointed to attend to the gathering and ginning of the cotton and he permitted McGough to do this through the tenants, as had been annually done prior to the seizure. As the cotton was ginned, the fourth bale was left at the gin as the landowner's part. One-fourth of the price of the seed was retained by the ginner who purchased all the seed, to be paid over to the owner.

The land was sold by the sheriff and purchased by the bank on September 29th. To that date seven bales had been left at the gin for the account of the landowner, and thereafter this number was increased by four additional bales. On October 12th there were eight bales of cotton at the gin and the bank's representative took possession of it, with the consent of the sheriff, and made private sale thereof for current price. Of said four bales, gathered and ginned after the date of the sheriff's deed, three of them were gathered and ginned subsequent to October 12th. The bank's representative also sold these. It is admitted that the net proceeds of the sale of all cotton amounted to $741.06. By calculation we find that the net proceeds of sale of the four bales not on hand at the date of the sheriff's sale were $222.80. It is admitted that the seed from the eleven bales sold for $100.61; $71.88 of this amount was paid by the ginner to the bank's representative on October 18th and the balance of $28.73 was paid to him on November 13th. By proportioning, we find the seed from said four bales sold for $23.64.

On February 28, 1936, plaintiff instituted the present suit against J. Fred Carpenter, sheriff of Morehouse parish, and the Federal Land Bank to recover the sale price

of the eleven bales of cotton and the seed. He alleges that the bank never accepted the assumption by him of part of the Higginbotham mortgage indebtedness, but, on the contrary, repudiated same by not making him a party to the foreclosure proceedings and argues that he is not, and never was, bound by it; that said rent cotton was left at the gin by tenants of the land for his account; that said cotton was seized by the sheriff at the instance of the bank and the cotton and seed delivered by said sheriff to said bank and by it sold for its own account. His position is that, as he was owner of the land on which the cotton was produced at the time of its seizure and not personally bound to the bank for the mortgage indebtedness, the rent cotton and seed belonged to him and not to the seizing creditor; that the sheriff tortiously deprived him of his property by seizing and delivering it to the mortgage creditor. He also sued for $250 as attorney's fees and for $500 to compensate for the embarrassment, inconvenience, and damages by reason of the illegal seizure and sale of his property and the withholding from him of the price thereof.

Both defendants answered. At the conclusion of the trial the bank filed a plea of prescription of one year in bar of plaintiff's demand. The plea was sustained and the bank passed out of the case. There is no complaint here of the court's ruling on this plea. The sheriff does not deny the salient allegations of fact alleged by and relied on by plaintiff to recover. He does seriously challenge the correctness of conclusions drawn by plaintiff from such facts; and he pleads: "And now further answering, respondent shows that in all matters pertaining to the aforesaid foreclosure suit, he acted in good faith and without fault; that plaintiff, W. S. Vosburg, was fully aware of the seizure and sale of the property involved in said foreclosure suit; that he was present in the Parish of Morehouse during all of said time and made no protest of any kind to respondent, nor did he make any claim to the effect that his property was being illegally sold and respondent shows that he is now estopped to claim any damages for the alleged illegal seizure and sale of his property, which estoppel respondent especially pleads as a bar to plaintiff's recovery."

From a judgment in favor of plaintiff for $841.67, with 5 per cent. per annum interest from judicial demand, the sheriff has appealed.

The mortgage foreclosed on by the Federal Land Bank contained the pact de non alienando and, as the bank did not accept or ratify the assumption by plaintiff of payment of part of the mortgage indebtedness, the assumpsit as to it was without effect. Stipulations pour autrui are ineffective until and unless accepted by him in whose favor they are made. There existed no sound reason whatever, in law, to join plaintiff as party defendant in the foreclosure proceedings. Bank v. Miller, 44 La.Ann. 199, 10 So. 779.

Plaintiff predicates his right to recover against the sheriff upon our holding in Federal Land Bank v. Carpenter, 164 So. 487. Therein the bank sought to hold the sheriff responsible for the value of the crops situated upon the seized land at the time of seizure. In that case, contrary to the present one, the sheriff made no seizure of the crops whatsoever. It was contended that a seizure of the crops logically and legally followed from the seizure of the realty. Article 466 of the Civil Code and article 656 of the Code of Practice were mainly relied upon. They read:

"*Fruits of immovables—Seizure.*—The fruits of an immovable, gathered or produced while it is under seizure, are considered as making part thereof, and inure to the benefit of the person making the seizure."

"*Houses and lands seized—Rents and profits also taken.*—When the sheriff seizes houses or lands, he must take at the same time all the rents, issues and revenue, which this property may yield."

The bank's demands in that case were rejected on the grounds and for the reason that the sheriff should not have seized the growing and ungathered crop because they were owned by the third possessor, the overseer, and tenants jointly, and that a seizure of said crops did not automatically result from the seizure of the land. The Supreme Court approved our interpretation of the law pertinent to the facts of the case by refusing to review it. In support of our conclusions in that case, we cited and relied on, Porche v. Bodin, 28 La.Ann. 761; Sandel v. Douglass, Sheriff, 27 La.Ann. 628; and Richardson v. Dinkgrave, Sheriff, 26 La.Ann. 632.

Counsel for the sheriff, who represented the bank in that case, is unconverted and still insists upon its incorrectness and urges us now to overrule it. We are unconvinced

of error therein and, since approved by the Supreme Court, will adhere to it.

Article 466 of the Civil Code, above quoted, is affected by exceptions as is true of almost all positive laws. For instance, it is expressly provided in paragraph 9 of article 3217 of the Civil Code that the privilege granted to an overseer, the laborers, the furnisher of supplies, etc., on the crops of a plantation shall not be divested by foreclosure of any prior mortgage or by any seizure or sale of the land while the crop is on it. A fortiori, would the rights of such persons be unaffected by the foreclosure where, for their labor or advances, they were due a .definite portion of the crop. The privileges above enumerated follow the crop into the hands of a third person who purchases it. They are not lost by sale of the crop. Many other privileges, contained in the Civil Code and created by statute law, prime pre-existing mortgages.

■ In Sandel v. Douglass, Sheriff, et al., supra, it was held that the mere seizure of mortgaged realty did not divest the lessee thereof of title to the crop being raised thereon by him. The seizure in no manner disturbed his cultivation of the plantation. The case of Richardson v. Dinkgrave, Sheriff, supra, is cited approvingly. In that case the court allowed Mrs. Richardson to recover crops produced on the seized plantation while under seizure. She was the lessee .of the plantation and personally financed the planting, cultivating, and gathering of the crop. The court did not restrict her rights to a refund of the amount she had advanced, but adjudged her to be the owner of the crops. Equity as well as justice, the court said, was on her side.

Article 3407 of the Civil Code is in consonance with the equitable principles enunciated by the court in the cited decisions and with its own article 3217. It is expressly provided in article 3407 that a third possessor of mortgaged land may claim for his expenses and improvements only to the amount of the increased value which is the result of the improvements made. This principle is discussed and applied in Bank v. Miller, supra. We recently had occasion to discuss this article in Central Savings Bank & Trust Co. v. Succession of Brandon, 167 So. 515, 517.

The underlying philosophy of these decisions and of the codal provisions is that no one ought to enrich himself at the expense of another. Civil Code, art. 1965.

■ We therefore hold that as concerns the rent cotton and seed gathered after the seizure of the land and before the bank acquired the property the case of Federal Land Bank v. Carpenter (La.App.) 164 So. 487, is controlling. As regards the rent cotton and seed gathered subsequent to said date, we express no opinion touching plaintiff's right thereto, in view of the conclusion we have reached that he is estopped by laches to hold the sheriff in damages for allowing the appropriation of the cotton and seed by the bank.

Plaintiff lived only a few miles from the situs of the seized cotton. He admits that his lessee, Mr. McGough, informed him in August of the seizure and admits that Mr. White, the ginner, told him that he had been notified to pay over to the bank the price of the sale of the seed. While he was given no official notice of the seizure of the crop, yet, as a matter of fact, he was actually advised of the situation in ample time to have asserted his rights and thereby relieve the sheriff from exposing himself to such damages as are now sought to be enforced against him. The greater part of the cotton and seed remained at the gin two weeks after the sheriff's sale and plaintiff made no move whatsoever to claim it. This inaction and silence, when he should have pursued an opposite course, certainly was calculated to impress the sheriff, then performing a ministerial duty, that he laid no claim to the property. He was asked:

"Q. Did you make any protest to the sheriff's office or to the Federal Land Bank that they had your property under seizure illegally?" To which he replied: "A. There wasn't any use to make any objection."

■ This is followed by the positive testimony that he registered no objection with the sheriff about the seizure, although he had full knowledge of it.

"Estoppel by laches consists of a neglect to do something which one should do, or to seek to enforce a right at a proper time." Hunt v. Reilly, 23 R.I. 471, 50 A. 833; Jett v. Jett, 171 Ky. 548, 188 S.W. 669; 21 Corpus Juris, 1060.

This doctrine is not unknown to our own jurisprudence. Approval of it may be found in expressions of the Supreme Court in adjudicated cases. In Macias v. Lorio, Sheriff, et al., 41 La.Ann. 300, 6 So. 538, 539, the court, in passing on an application for rehearing, in order to clarify a part of

its opinion, said: "We did not mean or say that a third person, who sees his property seized as that of another, may close his lips or suffer his property to be taken without objection or notice of his claim, and then hold the sheriff in damages. What we held was, that when, as specifically alleged in this petition, the owner asserts his claim and protests against the seizure, the sheriff then proceeds at his peril."

In the more recent case of Connell v. David Bernhardt Paint Company, 163 La. 586, 112 So. 495, 496, the court again approves the doctrine of estoppel by laches or silence, in the following language: "It is also true that if the third person, whose property is seized under a writ directed against another, sees his property thus seized, but stands by and suffers it to be taken without objection and without giving notice of his claim, he cannot then hold the sheriff or constable liable for such wrongful seizure, because volunti non fit injuria. Macias v. Sheriff, Lorio, 41 La.Ann. 300, 6 So. 538 (on rehearing)."

The quoted expressions of the Court certainly are applicable to the facts of the present case. In each of the two cases the third person, asserting ownership to the seized property, protested its seizure and definitely made known to the seizing officer his claim of ownership thereto. And it is not indispensable to the application of this estoppel that the claimant be actually present at or witness the disposition of his property. Knowledge of the facts of seizure and opportunity to act must coexist to warrant its enforcement. In 10 Ruling Case Law, 694, par. 22, anent this question, we find the following pertinent statement: "This element of estoppel has been so often referred to as an estoppel by 'standing by', that the phrase has almost lost its primary significance of actual presence or participation in the transaction, and generally covers any silence where there is a knowledge and a duty to make a disclosure."

It is not every illegal seizure by a sheriff that exposes him to damages. As a rule, his duties in executing a process of court are ministerial. The court's fiat affords him a large measure of protection, generally, and full protection often. The lawmaker, out of its solicitude for the protection of sheriffs and constables in seizing personal property, wisely enacted Act No. 37 of 1882, amending section 3579 of the Revised Statutes. Plaintiff should have availed himself of the provisions of this act and thereby afforded the sheriff the opportunity of requiring a bond of indemnity from the bank, the seizing creditor.

In the present case, the sheriff acted in utmost good faith. There is no suggestion to the contrary. In Saia v. Phœnix Building & Homestead Association et al., 182 La. 844, 162 So. 640, the sheriff was held not amenable to action for damages, although he seized property over the protest of the owner, which had been previously released from the mortgage being foreclosed. The attorney preparing the petition for executory process inadvertently overlooked the fact of release which had been indorsed on the mortgage note and included the released property therein. It was held in that case: "Plaintiff held not entitled to recover against civil sheriff in action for illegal seizure and advertisement of property under order for executory process, where sheriff was acting in good faith and without fault in executing orders of court."

The seizing creditor was held in damages for the wrongful seizure.

In the instant case, plaintiff delayed over one year to seek relief through the court. The ultimate effect of his tardy action is that the bank, the real beneficiary of the wrongful seizure, goes free from liability because of the prescription of one year applicable to it, while the sheriff, the innocent party, but for plaintiff's laches, would be forced to indemnify him for his loss. Acts of malfeasance by a sheriff are only barred by the prescription of two years. Revised Statutes, § 2816 (Dart's L.G.S. § 2049).

For the reasons assigned, the judgment appealed from is annulled, reversed, and set aside; the plea of estoppel filed by defendant is sustained; and plaintiff's suit dismissed and his demands rejected at his costs.